Royce ROBERTS & Melba
Roberts, Appellants,

v.

Don CLARK & Opal Clark, Appellees.

No. 12–01–00112–CV.

Court of Appeals of Texas,
Tyler.

Feb. 22, 2002.

Rehearing Overruled May 16, 2002.

---

33.  *Id.* at 291–292, 109 S.Ct. 285.

M. Keith Dollahite, Tyler, for appellants.

James S. Robertson, Jr., Wilson, Sheehy, Knowles, Robertson & Cornelius, P.C., Tyler, for appellees.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

LEONARD DAVIS, Chief Justice.

The previous opinion delivered on February 13, 2002 is withdrawn and set aside, and the following opinion is entered in lieu thereof.

Royce and Melba Roberts appeal from a summary judgment entered in favor of Don and Opal Clark in a suit filed by the Clarks for breach of a contract for the sale of real property. In two issues, the Robertses contend the trial court erred in granting the summary judgment because fact issues exist. We affirm.

## BACKGROUND

Don and Opal Clark (the "Sellers") agreed to sell 340 acres of land to Royce and Melba Roberts (the "Buyers"). The parties drafted and executed a contract wherein the Buyers agreed to pay $1.6 million in certified funds on or before May 1, 2000. Thereafter, the Buyers arranged to obtain a loan from AgriLand Farm Credit Services in the amount of $1.3 million. The Buyers transferred $300,000 in cash to AgriLand. AgriLand was going to forward the $300,000 to the title company at the same time as it wire transferred the $1.3 million loan proceeds. On May 1, 2000, the Buyers and AgriLand's agent, Brian Harris, went to the title company for closing. The Buyers signed all necessary documents. However, AgriLand did not wire transfer the funds, refusing to do so until the Sellers had signed the deed and placed it in escrow with the title company. The Sellers did not attend closing, as they insisted on being paid before signing the deed.

The Sellers filed suit for breach of contract, asking the court to declare the contract terminated because the Buyers did

not tender payment on or before May 1, 2000 as required by the contract. The Buyers counterclaimed for specific performance. The Sellers moved for a traditional summary judgment [1], asserting that the Buyers failed to tender $1.6 million on or before May 1, 2000 and, inasmuch as the contract required payment of the purchase price before the Sellers' duty to sign the deed arose, the Sellers were excused from performing under the contract and the Buyers are not entitled to specific performance. The trial judge agreed. The trial court's judgment ordered the contract terminated and that the Buyers take nothing on their counterclaim for specific performance.

### ADMISSIBILITY OF EVIDENCE

■ Initially we address the Buyers ninth and final argument under their first issue in which they assert the trial court erred in admitting inadmissible evidence in support of the Sellers' motion for summary judgment. The brief refers rather generally to evidence that was objected to as hearsay, conclusory, not based on personal knowledge, and improper opinions.

■ Admission or exclusion of evidence is a matter within the trial court's discretion. *Maldonado v. Frio Hosp. Ass'n.*, 25 S.W.3d 274, 277 (Tex.App.San Antonio 2000, no pet.). In reviewing a cause tried before the court, the appellate court generally assumes that the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex.1982). Further, the admission of incompetent evidence does not require reversal when there is competent evidence to authorize its rendition. *Id.* There is no reversible error if the evidence in question is cumulative or is not controlling on a material issue dispositive of the case. *Sanders v. Shelton*, 970 S.W.2d 721, 727 (Tex.App.Austin 1998, pet. denied). Thus, evidentiary rulings will not cause reversal unless an appellant demonstrates that the entire case turns on the evidence improperly admitted. *Wolfe v. Wolfe*, 918 S.W.2d 533, 538 (Tex.App.El Paso 1996, writ denied). We determine whether the case turns on the evidence at issue by reviewing the entire record. *Gillespie*, 644 S.W.2d at 450.

Claiming that it is hearsay, the Buyers objected to the statement in Don Clark's affidavit that he had been told by representatives of the title company and certain individuals that the funds would not be available at the time he was to sign the deed. They made the same objection to statements in Amy Richey's affidavit. Richey, a friend of the Clarks, stated that Dee Curtis of the title company told her it would not be possible for the sellers to receive their funds on May 1 and that Curtis explained the Sellers' options. Richey also stated that the Clarks said they were unwilling to extend closing or wait until May 2 to receive the money. Sue Ray, with First American Title Insurance Company, testified that she explained the wire transfer process to the Sellers and told them it would not be possible to deliver the funds to them on May 1. Don Clark testified that he was unwilling to sign the deed until he had certified funds in his hands. He explained that he did not go to the title company on May 1 because he was told the money was not there. Accordingly, as there is competent summary judgment evidence virtually identical to the complained-of hearsay evidence, any error in its admission is not harmful. *Gillespie*, 644 S.W.2d at 450.

■ The Buyers complain that the trial court overruled their other objections to

---

1. *See* TEX.R. CIV. P. 166a(c).

other portions of the Sellers' summary judgment proof, which they allege is inadmissible as conclusory, not based on personal knowledge, or as improper opinions. Without elaboration, they refer us to several places in the record, including the objection they filed in the trial court which, in turn, also refers us to several places in the record. They do not set out the remainder of the objected-to testimony or discuss their complaints about it. Mere reference to record pages does not sufficiently identify the court's actions complained of. *See* Tex.R.App. P. 38.1(h); *Smith v. Valdez*, 764 S.W.2d 26, 27 (Tex. App.San Antonio1989, writ denied). Further, as to the evidence complained of here, we assume the trial court disregarded any improperly admitted evidence. *Gillespie*, 644 S.W.2d at 450. We overrule that portion of Buyers' first issue complaining of the admissibility of certain evidence.

### BREACH OF CONTRACT

In their first issue, the Buyers assert that the trial court erred in holding as a matter of law that the Buyers breached the contract, the contract terminated, and the Sellers' performance is excused. They discuss numerous alleged errors made by the trial court and assert that several fact issues remain. In their second issue, they contend the trial court erred in holding that the Buyers are not entitled to specific performance as a matter of law. Among other arguments, they contend there are fact questions regarding whether the contract requires the Buyers to make payment before the Sellers execute the deed and whether tender of a wire transfer satisfied the contract.

**Standard of Review**

To obtain a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact

and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

A plaintiff, as movant, must conclusively prove all essential elements of his claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam). Once a movant has established the right to a summary judgment on the issues presented, the non-movant has the burden of introducing evidence that raises issues of fact. *Mott v. Montgomery County*, 882 S.W.2d 635, 640 (Tex.App.-Beaumont 1994, writ denied).

**Breach of Contract**

A plaintiff asserting breach of contract must establish, inter alia, the existence of the contract sued upon, his compliance with the terms of the contract or that he is ready, willing, and able to comply but has a valid excuse for his nonperformance, and the defendant's breach of the contract. *Stegman v. Chavers*, 704 S.W.2d 793, 795 (Tex.App.Dallas 1985, no writ). A breach of contract occurs when a party fails or refuses to perform an act that it expressly promised to do. *Methodist Hosps. v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex.App.Dallas 1991, writ denied).

The contract sued upon was placed in evidence. Further, as Buyers counterclaimed for specific performance, the existence of the contract is not questioned. Sellers proved the first element of their cause of action. The remaining elements require closer examination. Sellers assert the contract clearly requires the Buyers to tender payment on or before May 1, 2000

before the Sellers' duty to execute the deed even arises. In other words, Sellers contend that tender of payment is a condition precedent. Buyers disagree, asserting that it is a covenant.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Courts examine and consider the entire writing and give effect to all provisions of the contract so that none will be rendered meaningless. *Id.* If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.*

The pertinent portions of the contract provide:

2. **PURCHASE PRICE.** Buyers hereby agree to pay, and Sellers agree to accept for the property attached as Exhibit "A" to this contract, the sum of ONE MILLION SIX HUNDRED THOUSAND DOLLARS ($1,600,000.00) in certified funds. Said $1,600,000.00 to be paid on or before May 1, 2000.

. . .

3. **TITLE DOCUMENTS AND SURVEY.** If the Buyers make the payment herein called for and shall fully keep and perform each and all of the covenants made by the Buyers, the Sellers shall make, execute and deliver to the Buyers the Sellers' Warranty Deed conveying the aforesaid property free and clear of all liens and encumbrances except for the taxes due for 1999.

. . .

7. *CLOSING.* The closing of the sale shall be on or before May 1, 2000, which shall be extended on the occurrence of the following: The closing day shall be extended for a period not to exceed thirty (30) days if objections to the title and/or survey have been discovered that have not been cured, in order to cure such objections; PROVIDED, HOWEVER, in no event shall the closing date be extended beyond June 1, 2000. The closing shall take place at First American Title, Lindale, Texas.

. . .

Sellers maintain that the requirement that Buyers tender payment on or before a certain date is a condition precedent to their duty to execute the deed. A condition precedent is an event that must happen or be performed before a right can accrue to enforce a contract. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). While no particular words are necessary for the existence of a condition, such terms as "if," "provided that," "on condition that," or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. *Id.* The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent. *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966).

The contract specifically states in paragraph two that Buyers agree to pay $1.6 million on or before May 1, 2000. Paragraph three states, in pertinent part, that if the Buyers make the payment required in paragraph two, the Sellers shall make, execute, and deliver the deed. Giving this language its plain, grammatical meaning, the parties use of the word "if" in paragraph three indicates their intent to require the Buyers to tender payment before the Sellers' duty to execute the deed would arise. *Hohenberg Bros.,* 537 S.W.2d at 3. Further, the word "shall" as used in contracts is generally mandatory, operating to impose a duty. BLACK'S LAW DICTIONARY 1379 (7th ed.1999). Consequently, tender

of payment by the Buyers is a condition precedent to execution of the deed by Sellers and, once payment has been tendered, the Sellers will have a duty to sign the deed. Accordingly, we must next determine if the Buyers' acts constitute tender of payment on or before May 1, 2000.

■■■ A tender is an unconditional offer by a debtor or obligor to pay another a sum not less in amount than that due on a specified debt or obligation. *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex.1963). A valid and legal tender of money consists of the actual production of the funds and offer to pay the debt involved. The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession. *Id.*

■■ Royce Roberts testified that he did not personally have possession of the $1.6 million, but relied on AgriLand to provide the funds. He attended closing and was willing and ready to close the deal. He signed some documents and left.

AgriLand's local agent, Brian Harris, testified that he planned to wire the Roberts' $300,000 to the title company at the same time the remaining $1.3 million was wired from AgriLand's Austin office. He was to activate the wire as soon as he knew all documents were signed by both parties. The Buyers signed everything they needed to sign on May 1. All that remained to be done before the wire could be activated was for the Sellers to sign the deed. Harris testified that he was willing and able to close the loan and pay the money on May 1. However, he told the Buyers that he could not "cut a check" that day because the Sellers were not at closing to sign the deed and he could not fund until the deed was signed. He reiterated that he did not deliver $1.6 million to

First American Title Insurance Company on May 1 because all documents were not signed. He would not deliver the funds until the Sellers had signed the deed which gave AgriLand a vendor's lien on the entire 340 acres under contract.

Sue Ray, with First American Title Insurance Company, testified that, prior to May 1, she explained to the Sellers that AgriLand would not issue the wire transfer until the Sellers signed the deed. Therefore, the money would not be at the title company at the time of closing. She testified that the Sellers always expected their money to be paid at closing. The Sellers went to the title company's office on May 2, but would not sign because the money was not there. Ray testified that AgriLand refused to bring the funds to closing but that the Sellers never refused to attend closing. She stated that the Sellers had no problem with signing the deed with the vendor's lien if the loan proceeds were at the title company. She specifically stated that AgriLand did not tender the funds on or before May 1. She testified that the term "certified funds" can mean either a wire transfer or a cashier's check. Finally, she explained, neither the Buyers nor their lender tendered $1.6 million to her on or before May 1 and that is why the transaction did not close.

Dee Curtis, an escrow agent with First American Title Insurance Company, also testified that they would not receive the wire transfer until the Sellers signed the deed and the Sellers said they would not sign until they had the money. She also stated that neither the Buyers nor the lender tendered the money on or before May 1.

Don Clark testified that the Buyers were to pay on or before May 1, 2000, the funds were not available on that date, and that is the basis of his breach of contract

claim. He anticipated getting the money at the time he signed the deed. He was not willing to sign the deed until he had certified funds in his hands.

The Sellers' summary judgment evidence consists of testimony from several different witnesses who all testify to the same pertinent facts. The Sellers expected to be paid before they signed the deed. The lender, AgriLand, insisted that the Sellers sign the deed before it would begin the process for sending the money to the title company which would process it through their system and then turn it over to the Sellers. Although Roberts testified that he was willing and ready to close the deal, he did not control the money. Harris testified that he could start the wire transfer process, but not until after the Sellers signed the deed. Therefore, even though he stated he was ready, willing and able to close the deal, he could do nothing further until *after* the Sellers signed the deed. The testimony is clear that the money was not at the title company on or before May 1, 2000. Therefore, there was no actual production of funds and the Buyers never relinquished possession of $1.6 million so the Sellers were never able to acquire its possession. *See Baucum*, 370 S.W.2d at 866. Accordingly, as the tender of the funds was conditioned upon the Sellers' act of signing the deed, no legal tender occurred. *Id.*

As the Sellers have conclusively proven that the Buyers did not comply with the condition in the contract that they make payment on or before May 1, 2000, the Sellers have shown that the Buyers breached the contract. *Methodist Hosps.*, 806 S.W.2d at 882. It might be argued that the application of this rule produces a harsh result since AgriLand was merely attempting to do business as usual and its requested procedure was not unreasonable. However, the Sellers are entitled, reasonably or unreasonably, to rely upon their legal rights under the terms of the contract signed by the parties. *See Baucum*, 370 S.W.2d at 867.

The evidence shows the Sellers were ready, willing and able to comply with the terms of the contract but had a valid excuse for nonperformance under the terms of the contract. When a promise is subject to a condition precedent, there is no liability or obligation on the promissor and there can be no breach of the contract by him until and unless such condition or contingency is performed or occurs. *Toland v. Kaliff*, 435 S.W.2d 260, 262 (Tex. Civ.App.San Antonio 1968, no writ). Thus, the Sellers met their burden to show the existence of the contract sued upon, that they were ready, willing, and able to comply but had a valid excuse for their nonperformance, and that the Buyers breached the contract and the Sellers conclusively proved all essential elements of their claim. *See MMP, Ltd.*, 710 S.W.2d at 60; *Stegman*, 704 S.W.2d at 795. We conclude the Sellers' summary judgment evidence proves as a matter of law that the Buyers breached the contract, the contract terminated, and the Sellers' performance was excused.

The burden then shifted to the Buyers to present summary judgment evidence raising a fact question to defeat the Sellers' summary judgment. *Mott*, 882 S.W.2d at 640. In their response to the Sellers' motion for summary judgment, the Buyers listed twenty fact issues they allege to exist. These issues involve the elements of breach of contract, the question of the sufficiency of tender of payment, and the question of whether the payment term is a condition precedent. We have already addressed these issues and found no fact issue remaining. Almost half of their named fact questions are immaterial as they involve the day after the

contractually agreed-to date of closing or the form of payment, which is not at issue here.

Additionally, the Buyers contend there are fact issues regarding their affirmative defenses of estoppel and waiver. The Buyers assert that the Sellers are estopped from claiming breach of contract because the Sellers themselves breached the contract by not appearing at closing on May 1 and by failing to sign the deed. They further assert that the Sellers' partial performance carrying over to May 2 acted to estop them from denying the closing date was extended to May 2. The Buyers also assert the Sellers waived any claim for breach of contract by agreeing to appear on May 2 for the purpose of closing. In support of their response, the Buyers presented deposition testimony of Brian Harris, Sue Ray, Don Clark, and Amy Richey, Royce Roberts' affidavit, and the contract at issue. This evidence covers essentially the same facts that were presented to the trial court in the Sellers' summary judgment evidence.

■■■■ A non-movant asserting an affirmative defense has the burden of presenting proof raising a fact issue as to each element of his defensive claim. *McCall v. Trucks of Texas, Inc.*, 535 S.W.2d 791, 794 (Tex.Civ.App.Houston [1st Dist.] 1976, writ ref'd n.r.e.). Estoppel is defined in general as conduct which causes the other party to materially alter his position in reliance on that conduct. *Braugh v. Phillips*, 557 S.W.2d 155, 158 (Tex.Civ.App.Corpus Christi 1977, writ ref'd n.r.e.). To invoke the doctrine of estoppel, all the necessary elements of estoppel must be present. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex.App.Tyler 1985, no writ). One of its essential requisites is a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine. *Id.* The purpose of estoppel is for the protection of those who have been misled by that which upon its face was fair. *Id.* A person may not assert estoppel for the purpose of shielding himself from the results of his own dereliction of duty. *Id.*

■■■■ Performance of conditions precedent to a contract can be waived by either words or deeds. *Braugh*, 557 S.W.2d at 158. A waiver is an intentional release, relinquishment, or surrender of a known right. *Id.* In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 750 (Tex.App.El Paso 2000, no pet.).

■■■■ Buyers claim that they are excused from performance because the Sellers breached by not appearing or signing the deed on May 1 and because they did appear at the title company on May 2. As we have discussed, the Sellers were not required to sign the deed until after Buyers tendered the funds and, as that never happened, it cannot be said that Sellers breached by not appearing on May 1 or by failing to sign the deed. *Toland*, 435 S.W.2d at 262. Accordingly, this cannot be the basis for finding Sellers are estopped from asserting breach of contract.

■■■■ We turn next to Buyers' argument that Sellers' appearance at the title company on May 2 works as an estoppel and waiver. For Buyers to recover under their estoppel and waiver theories they must raise a material fact issue regarding whether Sellers intended to hold Buyers to the condition precedent that they tender the funds on or before May 1 and before the Sellers signed the deed or whether they signified their intent to release Buyers from that condition precedent. *See Hornburg*, 20 S.W.3d at 750; *Braugh*, 557

S.W.2d at 158–59. In other words, they must raise a material fact issue regarding whether the Sellers intended to relinquish their right to withhold their signatures until after the Buyers tendered the money. We look to the summary judgment evidence to determine if there was any conduct by the Sellers relied on by the Buyers to materially alter their position.

The summary judgment evidence shows that closing was scheduled for 2:00 p.m. on May 1 and, due to time consuming closing and banking procedures, the title company's agents would be unable to hand a cashier's check to the Sellers on May 1 even if the wire transfer process was started on that day. The Sellers did not appear at the title company on May 1 because Sue Ray had told them the money would not be there on that day and they had no intention of signing the deed until they had been given the funds. The Sellers told Sue Ray they would appear on May 2. This information was relayed to Harris. The Sellers testified that they appeared at the title company on May 2, were told the money was not there and they would not have it until they signed, so they left. They always insisted on being given the money before they signed the deed. Accordingly, there is no showing the Sellers intended to release the Buyers from the requirement that they tender the funds before the Sellers signed the deed.

Although the Buyers were, on May 1, aware that the Sellers planned to appear on May 2, this did not lead to their failure to tender. The evidence shows that the Buyers' failure to tender on May 1 was due to the bank's refusal to wire the money before the Sellers signed the deed. There is no evidence that their failure to tender was a result of their reliance on the Sellers' statement that they would be at the title company on May 2. They did not alter their position because of the Sellers' actions or statements. Therefore, even if it can be said that there is a fact question regarding whether the Sellers' act of going to the title company on May 2 extended the contractual deadline from May 1 to May 2, the Buyers have not met their burden to overcome the summary judgment because they have not shown reliance on the Sellers' act or statements and did not materially alter their position. *Douglas,* 695 S.W.2d at 317; *Braugh,* 557 S.W.2d at 158. Further, the date of tender is not a material issue under the facts of this case. This case turns on the question of who must act first, Buyers or Sellers, which we have already decided. Moreover, even if the Sellers' acts extended the deadline, the outcome would be the same as the Buyers did not tender the money on May 2.

Finally, there is no showing the Buyers were misled by the Sellers' failure to appear on May 1 or their appearance on May 2. The Buyers cannot assert estoppel to shield themselves from the results of their failure to perform the condition precedent. *Douglas,* 695 S.W.2d at 317. We determine that the Buyers did not raise a material fact issue on their affirmative defenses of estoppel and waiver. *See Hornburg,* 20 S.W.3d at 750; *Douglas,* 695 S.W.2d at 317. As the determination of the issues thus far discussed are dispositive of the case, we need not address the Buyers remaining arguments. We overrule Buyers' first and second issues.

### Conclusion

We conclude that the trial court did not err in granting Sellers' motion for summary judgment ordering the contract terminated and that the Buyers take nothing on their counterclaim.

We affirm the trial court's judgment.