# NO. 12-07-00384-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KENNETH L. KEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *D. BAILEY TYLER,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

Kenneth L. Key appeals the trial court's judgment in a lawsuit brought against him by D. Bailey Tyler. Key raises five issues on appeal. We affirm.

### BACKGROUND

Key sought to sell a building he owned in Smith County, Texas. Tyler entered into a written contract with Key to purchase the building for $80,750. According to the contract, the closing date of the sale was to be on or before October 31, 2002, or within seven days after objections to title had been cured, whichever date was later. After a series of failed attempts to close the sale, Key, by written letter, informed the title company that he was terminating the contract.

Tyler sued Key, alleging that Key had breached the real estate contract. Key brought a counterclaim, alleging that Tyler had breached the contract. Following a bench trial, the trial court signed a judgment awarding Tyler $131,250 in damages. The trial court also awarded Tyler attorney's fees. This appeal followed.

In his third and fourth issues, Key argues that "The Evidence is Legally and Factually Insufficient to Support the District Court's Findings of Fact 3-36 and Conclusions of Law 2-8."[1]

**Standard of Review**

A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When reviewing a finding of fact for legal sufficiency, we may set aside the finding only if the evidence at trial would not enable a reasonable and fair minded finder of fact to make the finding under review. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id.* If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to disregard in a way that was in favor of the findings. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Canal*, 238 S.W.3d at 557 (quoting *City of Keller*, 168 S.W.3d at 819-20).

In addition, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where a reasonable finder of fact could resolve conflicting

---

[1] Unchallenged findings of fact, absent fundamental error, are not subject to appellate review and must be accepted by an appellate court as proven facts. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 559-60 (Tex. App.–Tyler 2007, pet. denied) (citing *Lovejoy v. Lillie*, 569 S.W.2d 501, 504 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) (op. on reh'g)).

evidence either way, we must presume the finder of fact did so in favor of the findings. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 821). Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

Regarding factual sufficiency challenges, where a party who did not have the burden of proof on an issue asserts that the trial court's finding of fact is contrary to the evidence, we must overrule the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly unjust. *Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 637 (Tex. App.–Tyler 2004, no pet.) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). In conducting our review, we must consider all of the evidence that supports and that which is contrary to the finding. *Sembera v. Petrofac Tyler, Inc.*, 253 S.W.3d 815, 824 (Tex. App.–Tyler 2008, pet. filed) (citing *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989)). "Reversal [can] occur because the finding [is] based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof." *Sembera*, 253 S.W.3d at 824 (quoting *Santa Fe Petroleum*, 156 S.W.3d at 637).

When reviewing factual sufficiency issues arising from a bench trial, we must remember that the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses. *Canal*, 238 S.W.3d at 557 (citing *Santa Fe Petroleum*, 156 S.W.3d at 638). The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Canal*, 238 S.W.3d at 557-58 (citing *Santa Fe Petroleum*, 156 S.W.3d at 638). Where enough evidence is before the trial court so that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the trial court. *Canal*, 238 S.W.3d at 558 (citing *Santa Fe Petroleum*, 156 S.W.3d at 638).

**Discussion**[2]

The challenged findings, which are explicitly set forth in findings of fact 3-36, are supported

---

[2] The trial court's written findings of fact and conclusion of law are attached as an appendix to this opinion.

and contradicted by varying degrees of evidence. For instance, it is uncontroverted that "Key never tendered to Tyler[,] or to the closing agent[,] the warranty deed from Scotty Cook to Key, and never filed same for record himself with the County Clerk of Smith County, Texas. . . ." The evidence related to the value of the property was vigorously contested. Tyler presented testimony from James Justice, a real estate appraiser, that the property was worth $212,000 at the time relevant to the proceedings. Justice's opinion had support in that Justice used other comparable sales to obtain a value per square foot of the building, and that value was within $100 of the county property tax appraisal value for the relevant year. However, Key testified, based on his experience as a real estate developer, that the property was worth between $150,000 and $155,000.

No finding challenged by Key is completely without support in the evidence. Instead, Key has challenged findings that were made after reviewing favorable evidence. Some of that evidence was uncontroverted and some was disputed. We reiterate that, where reasonable, we must assume that the trial court resolved questions of credibility and conflicts in the evidence in favor of its findings. *See Canal*, 238 S.W.3d at 557-58. Likewise, where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *See id.* Having reviewed the entire record, we have detected no instance where the evidence at trial would not enable a reasonable and fair minded finder of fact to make the findings under review. *See id.* at 557. Likewise, we have detected no instance where the trial court's findings were clearly wrong and manifestly unjust. *See Santa Fe Petroleum*, 156 S.W.3d at 637. Therefore, we hold that the evidence was legally and factually sufficient to support the complained of findings. *See Canal*, 238 S.W.3d at 557; *Santa Fe Petroleum*, 156 S.W.3d at 637. We overrule Key's third and fourth issues.[3]

---

[3] To the extent that Key intended to raise a complaint in his third and fourth issues as to the trial court's determination of the law and application of the law to the facts, our resolution below of Key's first, second, and fifth issues renders further discussion unnecessary in all matters but those related to the trial court's written conclusions of law 7 and 8. To the extent that Key intended to assert that the trial court incorrectly determined or applied the law to the found facts underlying conclusions of law 7 and 8, Key has either failed to provide citation to the record or authority or failed to provide substantive argument. Therefore, Key has failed to present the arguments for appellate review. *See Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.–Dallas 2004, pet. denied).

4

In Key's first issue, he argues that Tyler was not entitled to a favorable judgment because she failed to satisfy a condition precedent to the contract: tendering cash for the property by the October 31, 2002 closing date. In Key's second issue, he argues that the closing date could not have been orally extended because such an oral modification of the closing date was barred by the statute of frauds.

## Standard of Review

An appellate court reviews a trial court's construction of an unambiguous contract de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). When construing a written contract, courts ascertain the intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Courts examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If there is no ambiguity in the instrument, its construction is a question of law for the court. *See id.* Interpretation of a contract becomes a fact issue, to be resolved by extrinsic evidence, only when application of pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper. *Id.* at 393-94. We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Canal*, 238 S.W.3d at 561.

## Discussion

To establish a breach of contract, a party must present evidence of the existence of the contract sued upon, the party's compliance with the terms of the contract or that the party is ready, willing and able to comply but has a valid excuse for nonperformance, and defendant's breach of the contract. *Roberts v. Clark*, 188 S.W.3d 204, 209 (Tex. App.—Tyler 2002, pet. denied). When a party fails or refuses to perform an act that it expressly promised to do, that party breaches the contract. *Id.* Here, Tyler placed the contract for the sale of property into evidence. Key has not challenged the trial court's conclusion of law that the contract between Key and Tyler was valid and enforceable at all times. Further, Key admittedly terminated the contract on approximately February 19, 2003, without delivering the property to Tyler. Nonetheless, Key argues that such

termination without fulfilling his promises under the contract was not a breach because the sale did not close timely and the contract provided that time was of the essence. As support for this proposition, Key cites our prior decision in **Roberts v. Clark**. Key's reliance on **Roberts** is misplaced.

In **Roberts**, the buyers agreed to provide to the sellers the purchase price of the contract on or before May 1, 2000. **Id.** at 210. The sellers agreed that, if the buyers made payment, they would provide the buyers with a warranty deed. **Id**. The buyers did not tender payment on or before May 1, 2000 and, therefore, the buyers breached the contract. **Id.** at 211-12.

As in **Roberts**, Tyler agreed to pay the purchase price at closing. But, unlike **Roberts**, the closing was to occur on "October 31, 2002, *or within 7 days after objections to title have been cured, whichever date is later . . . .*" (emphasis added). The contract further provided that "Buyer's failure to timely object or terminate [based on defects in title] is a waiver of Buyer's right to object[,] except that Buyer will not waive the requirements in Schedule C of the commitment." Thus, the contract between Key and Tyler mandated that the requirements in Schedule C had to be satisfied and could not be waived by Tyler. When read in conjunction with the language of the contract related to the closing date, the closing could not occur until the requirements in Schedule C of the commitment for title insurance were satisfied. It is uncontroverted that one of those requirements, that Key file a warranty deed from Scotty Cook to Key with the County Clerk of Smith County, was not met prior to February 19, 2003, the date Key terminated the contract. Therefore, the deadline for closing had not yet passed on February 19, 2003, and Key's termination of the contract resulted in a breach.

Because the deadline for closing had not passed on October 31, 2002, which was the earliest closing date specified in the contract, Tyler's failure to tender cash for the property on that date did not result in a breach of the contract or a violation of a condition precedent of the contract. Further, because the closing provision of the contract was in writing, the extension of the closing date, which resulted from Key's failure to satisfy an unwaivable objection to title, did not violate the statute of frauds. We overrule Key's first and second issues.

## COUNTERCLAIM

In Key's fifth issue, he argues that the trial court should have granted his counterclaim for breach of contract. Based upon our construction of the contract, as well as our review of the trial

court's findings of fact, we have held that Tyler did not breach the contract.  By the terms of the contract, the closing deadline had not passed when Key terminated the contract, and thus, Key, not Tyler, breached the contract by failing to fulfill his promises.  We overrule Key's fifth issue.

## DISPOSITION

We *affirm* the judgment of the trial court.

 BRIAN HOYLE 
Justice

Opinion delivered September 24, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

The following written findings of fact and conclusions of law were signed by the trial court and entered into the record:

FINDINGS OF FACT

1.  Kenneth L. Key, as Seller, and D. Bailey Tyler, as Buyer, entered into a contract for the sale of that certain real property at 1023 North Glenwood, Tyler, Texas, effective October 16, 2002.

2.  The contract provided for a purchase price of $80,750.00 to be paid to Key and did not contemplate seller financing.

3.  The contract provided that Key would provide to Tyler a commitment for title insurance and that Tyler would not waive the requirements appearing on Schedule C of the commitment.

4.  The contract provided that the sale would close on October 31, 2002, or within seven days of the date on which Tyler's title objections, if any, were cured, whichever was later.

5.  Key did not furnish a commitment for title insurance to Tyler until it was delivered by the title company to Tyler on or about November 13, 2002.

6.  Schedule C of the title commitment listed as an item to be cured by Key the filing of a written warranty deed from Scotty Cook to Kenneth L. Key covering Cook's interest in the title to the property.

7.  Although Key had in his possession the deed from Scotty Cook, he never filed it for record with the County Clerk of Smith County, Texas, never tendered it to Tyler, and never tendered it to a closing agent at a closing on the sale of the property.

8.  Key knew that Tyler was securing a loan for the purchase price from Southside Bank in Tyler, Texas.

9.  A closing of the sale of the property was scheduled for December 2, 2002, at the offices of Boren-Scott Abstract Company in Tyler, Texas, and Key was advised of the closing by Nikki Perryman, the realtor representing Tyler.

10. After October 31, 2002[,] and prior to December 2, 2002, Tyler incurred substantial expenses for a survey, an appraisal, an environmental study, and preparation of closing documents.

11. On December 2, 2002, Tyler appeared at the closing and was ready to close.

12. Key did not appear in person at the closing on December 2, 2002, but communicated by telephone an objection to the real estate commissions proposed to be paid as reflected on the closing statement for that closing and therefore refused to close.

13. Key did not raise on December 2, 2002, as an objection to closing[,] the failure of the sale to close by October 31, 2002.

14. Between December 2, 2002[] and December 18, 2002, the realtors who had competing claims to the real estate commission agreed in writing to divide between them the 6% commission provided for by the contract.

15. Subsequent to the agreement between the realtors, the closing was rescheduled for December 18, 2002, at the Law Offices of Ralph E. Allen in Tyler, Texas, and Key was advised by Perryman of the time and place of the closing.

16. On December 18, 2002, Tyler appeared at the closing and was ready to close.

17. Key did not appear at the closing on December 18, 2002, and failed to advise either Tyler, Perryman, or the closing agent, Ralph Allen, that he would not appear.

18. When contacted to explain why he failed to appear, Key made various excuses, but never stated that he objected to the closing due to the failure of the sale to close on October 31, 2002.

19. Over the next two months following December 18, 2002, Key and Perryman had repeated conversations concerning the scheduling of the closing, but Key never mentioned that he considered the failure to close the sale on October 31, 2002[] as a reason for his refusal to appear for closing.

20. Another closing was scheduled for February 17, 2003, at the Law Offices of Ralph E. Allen in Tyler, Texas, and Key was advised by Perryman of the time and place of closing.

21. Tyler appeared at the closing on February 17, 2003, and was ready to close.

22. Key did not appear at the closing on February 17, 2003, and failed to advise either Tyler, Perryman, or the closing agent, Ralph Allen, that he would not appear.

23. On February 19, 2003, Key advised Ralph Allen in a telephone conference that if Allen would secure and provide to Key a contract amendment executed by Tyler extending the closing date to February 17, 2003, Key would appear at Allen's office that afternoon to close on the sale to Tyler.

24. Pursuant to Key's representation and request, Allen prepared a contract amendment extending the closing date to February 17, 2003, obtained Tyler's signature, and faxed a copy of the signed amendment to Key.

25. After receiving the faxed amendment, Key prepared, signed, and faxed back to Allen[,] on February 19, 2003, a written termination of the contract reciting as the reason the failure of Tyler to close on October 31, 2002.

26. Prior to February 19, 2003, Key had not communicated to Tyler, Perryman, or Allen his intent to terminate the contract, either orally or in writing.

27. Prior to the attempts to close on December 2, 2002, on December 18, 2002, and on February 17, 2003, Key had communicated to Perryman his agreement to appear for closing on those dates.

28. On February 17, 2003, the market value of the property was $212,000.00.

29. As a result of Key's failure to close, Tyler suffered loss-of-bargain damages in the amount of $131,250.00.

9

30. Tyler had complied with all of Buyer's obligations under the contract the times of the closings scheduled for December 2, 2002, December 18, 2002, and February 17, 2003.

31. The contract provides that a prevailing party on a suit on the contract will recover its reasonable attorney's fees.

32. Tyler incurred reasonable and necessary attorney's fees in the prosecution of her case through trial of her case through trial in the amount of $16,906.50.

33. In the event of an appeal to the Court of Appeals, Tyler will incur reasonable and necessary attorney's fees in the amount of $7,800.00.

34. In the event of a petition for a writ of error to the Texas Supreme Court, Tyler will incur reasonable and necessary attorney's fees in the amount of $5,850.00.

35. Key never sought to schedule a closing prior to the first closing date scheduled on December 2, 2002.

36. Key waived his right to insist on a closing date any sooner than December 2, 2002, by those facts recited in Findings 5, 7, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 26, 27, and 35.

## CONCLUSIONS OF LAW

1. The contract between Key and Tyler was valid and enforceable at all times.

2. Under the terms of the contract and facts found above, Tyler was not obligated to close the sale until Key tendered to Tyler or to the closing agent the warranty deed from Scotty Cook to Key, or until he filed same with the County Clerk of Smith County, Texas.

3. Because Key never tendered to Tyler or to the closing agent the warranty deed from Scotty Cook to Key, and never filed same for record himself with the County Clerk of Smith County, Texas, the time for closing the sale had never expired prior to Key's written termination of the contract on February 19, 2003.

4. No act occurred by which Tyler violated the Statute of Frauds.

5. Key breached the contract with Tyler and Tyler is entitled to recover actual damages in the amount of $131,250.00 as a result of such breach.

6. Tyler did not breach the contract with Key.

7. Tyler is entitled to recover pre-judgment interest on the amount of $131,250.00 at the rate of 8% from March 22, 2004 (180 days from the date of filing of Plaintiff's Original Petition) to the date of judgment, the *per diem* amount of which is $28.76 per day.

8. Tyler is entitled to reasonable attorney's fees of $16,906.50, with an additional $7,800.00 in the event of an appeal to the Court of Appeals on which Tyler prevails, and an additional $5,850.00 in the event of a petition for writ of error to the Texas Supreme Court on which Tyler prevails.