NO. 12-07-00384-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


KENNETH L. KEY,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


D. BAILEY TYLER,

APPELLEE
§
 SMITH COUNTY, TEXAS


 

MEMORANDUM OPINION


 Kenneth L. Key appeals the trial court's judgment in a lawsuit brought against him by D.
Bailey Tyler. Key raises five issues on appeal. We affirm.


Background


 Key sought to sell a building he owned in Smith County, Texas. Tyler entered into a written
contract with Key to purchase the building for $80,750. According to the contract, the closing date
of the sale was to be on or before October 31, 2002, or within seven days after objections to title had
been cured, whichever date was later. After a series of failed attempts to close the sale, Key, by
written letter, informed the title company that he was terminating the contract.

 Tyler sued Key, alleging that Key had breached the real estate contract. Key brought a
counterclaim, alleging that Tyler had breached the contract. Following a bench trial, the trial court
signed a judgment awarding Tyler $131,250 in damages. The trial court also awarded Tyler
attorney's fees. This appeal followed.



Evidentiary Sufficiency

 In his third and fourth issues, Key argues that "The Evidence is Legally and Factually
Insufficient to Support the District Court's Findings of Fact 3-36 and Conclusions of Law 2-8." (1)

Standard of Review

 A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence
by the same standards that are applied in reviewing evidence supporting a jury's verdict. Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). When reviewing a finding of fact for legal
sufficiency, we may set aside the finding only if the evidence at trial would not enable a reasonable
and fair minded finder of fact to make the finding under review. Canal Ins. Co. v. Hopkins, 238
S.W.3d 549, 557 (Tex. App.-Tyler 2007, pet. denied) (citing City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005)). In making this determination, we must credit favorable evidence if a
reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact
could not. Id. The finder of fact is the sole judge of the credibility of the witnesses and the weight
to be assigned to their testimony. Canal, 238 S.W.3d at 557 (citing City of Keller, 168 S.W.3d at
819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts
may not impose their own opinions to the contrary. Id. Accordingly, reviewing courts must assume
that the finder of fact decided all credibility questions in favor of the findings if a reasonable person
could do so. Id. If a reasonable finder of fact could have done so, we must assume that the finder
of fact chose what testimony to disregard in a way that was in favor of the findings. Canal, 238
S.W.3d at 557 (citing City of Keller, 168 S.W.3d at 820). A finder of fact "may disregard even
uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. Canal,
238 S.W.3d at 557 (quoting City of Keller, 168 S.W.3d at 819-20).

 In addition, it is within the finder of fact's province to resolve conflicts in the evidence.
Canal, 238 S.W.3d at 557 (citing City of Keller, 168 S.W.3d at 820). Consequently, we must
assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner
consistent with the findings. Id. Where a reasonable finder of fact could resolve conflicting
evidence either way, we must presume the finder of fact did so in favor of the findings. Canal, 238
S.W.3d at 557 (citing City of Keller, 168 S.W.3d at 821). Where conflicting inferences can be
drawn from the evidence, it is within the province of the finder of fact to choose which inference
to draw, so long as more than one inference can reasonably be drawn. Id. Therefore, we must
assume the finder of fact made all inferences in favor of the findings if a reasonable person could
do so. Id.

 Regarding factual sufficiency challenges, where a party who did not have the burden of proof
on an issue asserts that the trial court's finding of fact is contrary to the evidence, we must overrule
the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly
unjust. Santa Fe Petroleum, L.L.C. v. Star Canyon Corp., 156 S.W.3d 630, 637 (Tex. App.-Tyler
2004, no pet.) (citing Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)). In conducting our review,
we must consider all of the evidence that supports and that which is contrary to the finding. 
Sembera v. Petrofac Tyler, Inc., 253 S.W.3d 815, 824 (Tex. App.-Tyler 2008, pet. filed) (citing
Sosa v. City of Balch Springs, 772 S.W.2d 71, 72 (Tex. 1989)). "Reversal [can] occur because the
finding [is] based on weak or insufficient evidence or because the proponent's proof, although
adequate if taken alone, is overwhelmed by the opponent's contrary proof." Sembera, 253 S.W.3d
at 824 (quoting Santa Fe Petroleum, 156 S.W.3d at 637).

 When reviewing factual sufficiency issues arising from a bench trial, we must remember that
the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses. Canal, 238
S.W.3d at 557 (citing Santa Fe Petroleum, 156 S.W.3d at 638). The trial court may take into
consideration all of the facts and surrounding circumstances in connection with the testimony of
each witness and accept or reject all or any part of that testimony. Canal, 238 S.W.3d at 557-58
(citing Santa Fe Petroleum, 156 S.W.3d at 638). Where enough evidence is before the trial court
so that reasonable minds could differ on the meaning of the evidence, or the inferences and
conclusions to be drawn from the evidence, we may not substitute our judgment for that of the trial
court. Canal, 238 S.W.3d at 558 (citing Santa Fe Petroleum, 156 S.W.3d at 638).

Discussion (2)

 The challenged findings, which are explicitly set forth in findings of fact 3-36, are supported
and contradicted by varying degrees of evidence. For instance, it is uncontroverted that "Key never
tendered to Tyler[,] or to the closing agent[,] the warranty deed from Scotty Cook to Key, and never
filed same for record himself with the County Clerk of Smith County, Texas. . . ." The evidence
related to the value of the property was vigorously contested. Tyler presented testimony from James
Justice, a real estate appraiser, that the property was worth $212,000 at the time relevant to the
proceedings. Justice's opinion had support in that Justice used other comparable sales to obtain a
value per square foot of the building, and that value was within $100 of the county property tax
appraisal value for the relevant year. However, Key testified, based on his experience as a real
estate developer, that the property was worth between $150,000 and $155,000. 

 No finding challenged by Key is completely without support in the evidence. Instead, Key
has challenged findings that were made after reviewing favorable evidence. Some of that evidence
was uncontroverted and some was disputed. We reiterate that, where reasonable, we must assume
that the trial court resolved questions of credibility and conflicts in the evidence in favor of its
findings. See Canal, 238 S.W.3d at 557-58. Likewise, where conflicting inferences can be drawn
from the evidence, it is within the province of the finder of fact to choose which inference to draw,
so long as more than one inference can reasonably be drawn. See id. Having reviewed the entire
record, we have detected no instance where the evidence at trial would not enable a reasonable and
fair minded finder of fact to make the findings under review. See id. at 557. Likewise, we have
detected no instance where the trial court's findings were clearly wrong and manifestly unjust. See
Santa Fe Petroleum, 156 S.W.3d at 637. Therefore, we hold that the evidence was legally and
factually sufficient to support the complained of findings. See Canal, 238 S.W.3d at 557; Santa Fe
Petroleum, 156 S.W.3d at 637. We overrule Key's third and fourth issues. (3)



Contract Construction

 In Key's first issue, he argues that Tyler was not entitled to a favorable judgment because
she failed to satisfy a condition precedent to the contract: tendering cash for the property by the
October 31, 2002 closing date. In Key's second issue, he argues that the closing date could not have
been orally extended because such an oral modification of the closing date was barred by the statute
of frauds.

Standard of Review

 An appellate court reviews a trial court's construction of an unambiguous contract de novo. 
MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999). In performing
a de novo review, we exercise our own judgment and redetermine each legal issue. Quick v. City
of Austin, 7 S.W.3d 109, 116 (Tex. 1999). When construing a written contract, courts ascertain the
intent of the parties as expressed in the instrument. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.
v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Courts examine and consider the entire
writing in an effort to harmonize and give effect to all the provisions of the contract so that none will
be rendered meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). If there is no
ambiguity in the instrument, its construction is a question of law for the court. See id. Interpretation
of a contract becomes a fact issue, to be resolved by extrinsic evidence, only when application of
pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper.
Id. at 393-94. We will uphold conclusions of law on appeal if the judgment can be sustained on any
legal theory the evidence supports. Canal, 238 S.W.3d at 561.

Discussion

 To establish a breach of contract, a party must present evidence of the existence of the
contract sued upon, the party's compliance with the terms of the contract or that the party is ready,
willing and able to comply but has a valid excuse for nonperformance, and defendant's breach of
the contract. Roberts v. Clark, 188 S.W.3d 204, 209 (Tex. App.--Tyler 2002, pet. denied). When
a party fails or refuses to perform an act that it expressly promised to do, that party breaches the
contract. Id. Here, Tyler placed the contract for the sale of property into evidence. Key has not
challenged the trial court's conclusion of law that the contract between Key and Tyler was valid and
enforceable at all times. Further, Key admittedly terminated the contract on approximately
February 19, 2003, without delivering the property to Tyler. Nonetheless, Key argues that such
termination without fulfilling his promises under the contract was not a breach because the sale did
not close timely and the contract provided that time was of the essence. As support for this
proposition, Key cites our prior decision in Roberts v. Clark. Key's reliance on Roberts is
misplaced.

 In Roberts, the buyers agreed to provide to the sellers the purchase price of the contract on
or before May 1, 2000. Id. at 210. The sellers agreed that, if the buyers made payment, they would
provide the buyers with a warranty deed. Id. The buyers did not tender payment on or before
May 1, 2000 and, therefore, the buyers breached the contract. Id. at 211-12.

 As in Roberts, Tyler agreed to pay the purchase price at closing. But, unlike Roberts, the
closing was to occur on "October 31, 2002, or within 7 days after objections to title have been
cured, whichever date is later . . . ." (emphasis added). The contract further provided that "Buyer's
failure to timely object or terminate [based on defects in title] is a waiver of Buyer's right to
object[,] except that Buyer will not waive the requirements in Schedule C of the commitment." 
Thus, the contract between Key and Tyler mandated that the requirements in Schedule C had to be
satisfied and could not be waived by Tyler. When read in conjunction with the language of the
contract related to the closing date, the closing could not occur until the requirements in Schedule
C of the commitment for title insurance were satisfied. It is uncontroverted that one of those
requirements, that Key file a warranty deed from Scotty Cook to Key with the County Clerk of
Smith County, was not met prior to February 19, 2003, the date Key terminated the contract. 
Therefore, the deadline for closing had not yet passed on February 19, 2003, and Key's termination
of the contract resulted in a breach.

 Because the deadline for closing had not passed on October 31, 2002, which was the earliest
closing date specified in the contract, Tyler's failure to tender cash for the property on that date did
not result in a breach of the contract or a violation of a condition precedent of the contract. Further,
because the closing provision of the contract was in writing, the extension of the closing date, which
resulted from Key's failure to satisfy an unwaivable objection to title, did not violate the statute of
frauds. We overrule Key's first and second issues.

 

Counterclaim

 In Key's fifth issue, he argues that the trial court should have granted his counterclaim for
breach of contract. Based upon our construction of the contract, as well as our review of the trial
court's findings of fact, we have held that Tyler did not breach the contract. By the terms of the
contract, the closing deadline had not passed when Key terminated the contract, and thus, Key, not
Tyler, breached the contract by failing to fulfill his promises. We overrule Key's fifth issue.


Disposition


 We affirm the judgment of the trial court.




 BRIAN HOYLE 

 Justice



Opinion delivered September 24, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.
























(PUBLISH)



Appendix


 The following written findings of fact and conclusions of law were signed by the trial court
and entered into the record:


FINDINGS OF FACT



 1. Kenneth L. Key, as Seller, and D. Bailey Tyler, as Buyer, entered into a contract
for the sale of that certain real property at 1023 North Glenwood, Tyler, Texas,
effective October 16, 2002.


 2. The contract provided for a purchase price of $80,750.00 to be paid to Key and did
not contemplate seller financing.


 3. The contract provided that Key would provide to Tyler a commitment for title
insurance and that Tyler would not waive the requirements appearing on Schedule
C of the commitment.


 4. The contract provided that the sale would close on October 31, 2002, or within
seven days of the date on which Tyler's title objections, if any, were cured,
whichever was later.


 5. Key did not furnish a commitment for title insurance to Tyler until it was delivered
by the title company to Tyler on or about November 13, 2002.


 6. Schedule C of the title commitment listed as an item to be cured by Key the filing
of a written warranty deed from Scotty Cook to Kenneth L. Key covering Cook's
interest in the title to the property.


 7. Although Key had in his possession the deed from Scotty Cook, he never filed it for
record with the County Clerk of Smith County, Texas, never tendered it to Tyler,
and never tendered it to a closing agent at a closing on the sale of the property.


 8. Key knew that Tyler was securing a loan for the purchase price from Southside
Bank in Tyler, Texas.


 9. A closing of the sale of the property was scheduled for December 2, 2002, at the
offices of Boren-Scott Abstract Company in Tyler, Texas, and Key was advised of
the closing by Nikki Perryman, the realtor representing Tyler.


 10. After October 31, 2002[,] and prior to December 2, 2002, Tyler incurred substantial
expenses for a survey, an appraisal, an environmental study, and preparation of
closing documents.


 11. On December 2, 2002, Tyler appeared at the closing and was ready to close.


 12. Key did not appear in person at the closing on December 2, 2002, but
communicated by telephone an objection to the real estate commissions proposed
to be paid as reflected on the closing statement for that closing and therefore
refused to close.


 13. Key did not raise on December 2, 2002, as an objection to closing[,] the failure of
the sale to close by October 31, 2002.


 14. Between December 2, 2002[] and December 18, 2002, the realtors who had
competing claims to the real estate commission agreed in writing to divide between
them the 6% commission provided for by the contract.


 15. Subsequent to the agreement between the realtors, the closing was rescheduled for
December 18, 2002, at the Law Offices of Ralph E. Allen in Tyler, Texas, and Key
was advised by Perryman of the time and place of the closing.


 16. On December 18, 2002, Tyler appeared at the closing and was ready to close.


 17. Key did not appear at the closing on December 18, 2002, and failed to advise either
Tyler, Perryman, or the closing agent, Ralph Allen, that he would not appear.


 18. When contacted to explain why he failed to appear, Key made various excuses, but
never stated that he objected to the closing due to the failure of the sale to close on
October 31, 2002.


 19. Over the next two months following December 18, 2002, Key and Perryman had
repeated conversations concerning the scheduling of the closing, but Key never
mentioned that he considered the failure to close the sale on October 31, 2002[] as
a reason for his refusal to appear for closing.


 20. Another closing was scheduled for February 17, 2003, at the Law Offices of Ralph
E. Allen in Tyler, Texas, and Key was advised by Perryman of the time and place
of closing.


 21. Tyler appeared at the closing on February 17, 2003, and was ready to close.


 22. Key did not appear at the closing on February 17, 2003, and failed to advise either
Tyler, Perryman, or the closing agent, Ralph Allen, that he would not appear.


 23. On February 19, 2003, Key advised Ralph Allen in a telephone conference that if
Allen would secure and provide to Key a contract amendment executed by Tyler
extending the closing date to February 17, 2003, Key would appear at Allen's office
that afternoon to close on the sale to Tyler.


 24. Pursuant to Key's representation and request, Allen prepared a contract amendment
extending the closing date to February 17, 2003, obtained Tyler's signature, and
faxed a copy of the signed amendment to Key.


 25. After receiving the faxed amendment, Key prepared, signed, and faxed back to
Allen[,] on February 19, 2003, a written termination of the contract reciting as the
reason the failure of Tyler to close on October 31, 2002.


 26. Prior to February 19, 2003, Key had not communicated to Tyler, Perryman, or
Allen his intent to terminate the contract, either orally or in writing.


 27. Prior to the attempts to close on December 2, 2002, on December 18, 2002, and on
February 17, 2003, Key had communicated to Perryman his agreement to appear
for closing on those dates.


 28. On February 17, 2003, the market value of the property was $212,000.00.


 29. As a result of Key's failure to close, Tyler suffered loss-of-bargain damages in the
amount of $131,250.00.


 30. Tyler had complied with all of Buyer's obligations under the contract the times of
the closings scheduled for December 2, 2002, December 18, 2002, and February 17,
2003.


 31. The contract provides that a prevailing party on a suit on the contract will recover
its reasonable attorney's fees.


 32. Tyler incurred reasonable and necessary attorney's fees in the prosecution of her
case through trial of her case through trial in the amount of $16,906.50.


 33. In the event of an appeal to the Court of Appeals, Tyler will incur reasonable and
necessary attorney's fees in the amount of $7,800.00.


 34. In the event of a petition for a writ of error to the Texas Supreme Court, Tyler will
incur reasonable and necessary attorney's fees in the amount of $5,850.00.


 35. Key never sought to schedule a closing prior to the first closing date scheduled on
December 2, 2002.


 36. Key waived his right to insist on a closing date any sooner than December 2, 2002,
by those facts recited in Findings 5, 7, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22,
26, 27, and 35.


CONCLUSIONS OF LAW



 1. The contract between Key and Tyler was valid and enforceable at all times.


 2. Under the terms of the contract and facts found above, Tyler was not obligated to
close the sale until Key tendered to Tyler or to the closing agent the warranty deed
from Scotty Cook to Key, or until he filed same with the County Clerk of Smith
County, Texas.


 3. Because Key never tendered to Tyler or to the closing agent the warranty deed from
Scotty Cook to Key, and never filed same for record himself with the County Clerk
of Smith County, Texas, the time for closing the sale had never expired prior to
Key's written termination of the contract on February 19, 2003.


 4. No act occurred by which Tyler violated the Statute of Frauds.


 5. Key breached the contract with Tyler and Tyler is entitled to recover actual
damages in the amount of $131,250.00 as a result of such breach.


 6. Tyler did not breach the contract with Key.


 7. Tyler is entitled to recover pre-judgment interest on the amount of $131,250.00 at
the rate of 8% from March 22, 2004 (180 days from the date of filing of Plaintiff's
Original Petition) to the date of judgment, the per diem amount of which is $28.76
per day.


 8. Tyler is entitled to reasonable attorney's fees of $16,906.50, with an additional
$7,800.00 in the event of an appeal to the Court of Appeals on which Tyler prevails,
and an additional $5,850.00 in the event of a petition for writ of error to the Texas
Supreme Court on which Tyler prevails.
1. Unchallenged findings of fact, absent fundamental error, are not subject to appellate review and must
be accepted by an appellate court as proven facts. Canal Ins. Co. v. Hopkins, 238 S.W.3d 549, 559-60
(Tex. App.-Tyler 2007, pet. denied) (citing Lovejoy v. Lillie, 569 S.W.2d 501, 504 (Tex. Civ. App.-Tyler
1978, writ ref'd n.r.e.) (op. on reh'g)).
2. The trial court's written findings of fact and conclusion of law are attached as an appendix to this
opinion.
3. To the extent that Key intended to raise a complaint in his third and fourth issues as to the trial court's
determination of the law and application of the law to the facts, our resolution below of Key's first, second,
and fifth issues renders further discussion unnecessary in all matters but those related to the trial court's
written conclusions of law 7 and 8. To the extent that Key intended to assert that the trial court incorrectly
determined or applied the law to the found facts underlying conclusions of law 7 and 8, Key has either
failed to provide citation to the record or authority or failed to provide substantive argument. Therefore,
Key has failed to present the arguments for appellate review. See Strange v. Cont'l Cas. Co., 126 S.W.3d
676, 678 (Tex. App.-Dallas 2004, pet. denied).