**SANTA FE PETROLEUM, L.L.C., Tex-Tron Southwest, L.L.C. and Southwest Land and Pipeline Company, L.L.C., Appellants,**

v.

**STAR CANYON CORPORATION, Appellee.**

No. 12–03–00403–CV.

Court of Appeals of Texas, Tyler.

Dec. 30, 2004.

David B. Dayer, for appellant.

Thomas R. McLeroy, Jr., for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## *OPINION*

JAMES T. WORTHEN, Chief Justice.

Appellants Santa Fe Petroleum, L.L.C., TexTron Southwest, L.L.C., and Southwest Land and Pipeline Company, L.L.C. (collectively "Santa Fe") appeal the trial court's judgment, which awarded a one percent overriding royalty interest in various Shelby County mineral leases to Star Canyon Corporation, as well as money damages and attorney's fees. Santa Fe raises six issues on appeal. We affirm.

### BACKGROUND

Santa Fe hired Sam Embras to organize a mineral development program for it in the James Lime Horizontal Gas Project in Shelby County (the "James Lime"). While seeking individuals to assist with the land purchase, Embras contacted Kent Lambeth, who was the president of Star Canyon. Embras, as agent of Santa Fe, agreed to pay Lambeth a five dollar bonus per acre purchased, as well as a one percent overriding royalty for any large blocks of acreage that Santa Fe could purchase.

Based upon the agreement, Star Canyon procured over eight thousand acres of mineral interests on behalf of Santa Fe in the James Lime. These mineral interests were transferred to Santa Fe by virtue of three closings in March, April, and October 1999.

At the March closing, Lambeth was told by the attorney for Santa Fe that he should get his overriding royalty interest in writing. On April 19, 1999, four days prior to the April closing, Lambeth received, by facsimile, the following signed

agreement from Tom Griffin, the president of Santa Fe:

April 19, 1999

### *AGREEMENT*

This agreement between Star Canyon Corporation, hereinafter referred to as "SCC" and Sante Fe Petroleum, L.L.C. hereinafter referred to as "SFP" and TexTron Southwest, L.L.C. hereinafter referred to as "TS" or any of their assigns or affiliates covering Federal Lease No. TXNM–89845 consisting of approximately 772 net acres and the HBP leasehold covered by Lease numbers 25666, 17850, 17842, and fee leases consisting of approximately 4,556.70 net acres and NON–HBP Leasehold covered by Lease numbers 71595 and 71596 consisting of approximately 3,621.29 net acres hereby agree to the following:

1. SFP, by signing this agreement, acknowledges that SCC has received a commission of Five Dollars ($5.00) per acre for the transaction covering lease number TXNM–89845 to close on or before April 23, 1999 and on the transaction covering the above referenced HBP and NON–HBP acreage that was closed on March 19, 1999.

2. It is understood that SCC shall be given an assignment of a one percent (1%) ORRI on any of the above referenced acreage to be delivered at the time a unit is formed containing any of the referenced acreage and said assignment shall be effective as of the date said unit was formed.

3. If the unit formed is not comprised one-hundred percent (100%) from the above referenced leases, the ORRI will be proportionately reduced.

If this letter agreement accurately sets forth your understanding of our previous verbal agreement to the subject matter hereof, please sign two copies of the letter in the space provided below and return one of the same to the undersigned.

Sincerely,
/s/ Kent Lambeth
Star Canyon Corporation
/s/ Kent Lambeth
Kent Lambeth, President
Santa Fe Petroleum, L.L.C.
/s/ Tom Griffin
Mr. Tom Griffin, President

On April 23, 1999, Lambeth and Griffin met at Santa Fe's Dallas office for the second closing. There, Lambeth presented two originals and a copy of the aforementioned letter agreement to Griffin for his signature. Griffin handed the originals of the agreement to Embras and instructed him to destroy them. Embras did as Griffin asked and placed the shredded documents in the trash. The parties then proceeded with the second closing, which resulted in the transfer of the seven hundred seventy-two net acres referenced in the agreement.

On May 11, 1999, Lambeth sent Griffin a letter requesting that he honor the agreement to transfer the one percent overriding royalty interest to Star Canyon. In May 2000, Star Canyon filed a declaratory judgment action against Santa Fe for breach of the April 19, 1999 letter agreement. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.001–37.011 (Vernon 1997 & Supp. 2004). After a bench trial, the one percent overriding royalty interest in the acreage described in the letter agreement was awarded to Star Canyon along with $174,235.19 in money damages and $12,000.00 in attorney's fees. Santa Fe timely filed this appeal.

## STANDARD OF REVIEW

▪ Our standard of review is limited in the instant case. When findings of fact are neither filed nor requested following a bench trial, it is implied that the trial court made all findings necessary to support its judgment, provided that (1) the necessary findings are raised by the pleadings and supported by the evidence and (2) the decision can be sustained by any reasonable theory consistent with the evidence and applicable law. *See Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *Fair Deal Auto Sales v. Brantley*, 24 S.W.3d 543, 546 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The appellant's burden on appeal is to show that the judgment of the court below cannot be sustained by any theory raised by the evidence. *See Brantley*, 24 S.W.3d at 546.

▪ The trial court's findings of fact, express or implied, after a bench trial are reviewable for legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a jury's answer. *See Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). We review de novo a trial court's conclusions of law, whether express or implied. *See Benedictine Sisters of the Good Shepherd v. Ellison*, 956 S.W.2d 629, 631 (Tex.App.-San Antonio 1997, pet. denied). A conclusion of law will be set aside if it is erroneous as a matter of law. *Id.*

### Complaint by party not having burden of proof

▪ When the complaining party raises a "no-evidence" or "legally insufficient evidence" issue challenging the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, we must overrule the challenge if, considering only the evidence and inferences that support

the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of the fact's existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). A no-evidence issue can be sustained only when the record reveals one of the following: (1) there is a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *See Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990).

In reviewing an "insufficient-evidence" issue challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Reversal could occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L. REV. 515, 519 n. 11 (1991).

### Complaint by party having burden of proof

When the party who had the burden of proof on an issue in a bench trial complains about the absence of a finding of fact by the court, we treat the absence of the finding as a refusal by the trial court to find the fact from a preponderance of the evidence. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If that party raises a "conclusive-evidence" or "matter-of-law" issue, i.e., asserts that the evidence conclusively established the critical fact such that the finding was established as a matter of law, we must first examine the record for evidence that supports the court's refusal to find that fact, while ignoring all evidence to the contrary. *See id.; Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). If we find evidence that supports the court's refusal to find the fact, the inquiry ends, and the issue will be sustained; but if we find no evidence to support the refusal, then the entire record must be examined to determine if the contrary proposition is established as a matter of law. *See Sterner,* 767 S.W.2d at 690.

When the party who had the burden of proof on an issue complains about the court's refusal to find a fact in a "contrary to the great weight and preponderance of the evidence" issue, i.e., asserts that the court's refusal to find the fact is contrary to the evidence, we must overrule the complaint unless, considering all the evidence, the refusal is contrary to the great weight and preponderance of the evidence. *See Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex. 1988).

When considering the factual sufficiency of the evidence, we do not weigh the evidence and set the verdict

aside merely because we believe that a different result is more reasonable. *Dubree v. Blackwell,* 67 S.W.3d 286, 289 (Tex. App.-Amarillo 2001, no pet.) (citing *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962)). The trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and weight to be given their testimony. *Nordstrom v. Nordstrom,* 965 S.W.2d 575, 580 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id.* Where enough evidence is before the fact finder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the fact finder. *Dubree,* 67 S.W.3d at 289.

### Rescission

In its first issue, Santa Fe contends that the trial court erred when it found the April 19 letter agreement was a valid contract because the evidence conclusively showed that the parties had agreed to rescind it. Santa Fe's argument presupposes that there existed a valid contract in the first place. *See, e.g., Humphrey v. Camelot Retirement Cmty.,* 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ) (rescission is an equitable remedy that operates to set aside a contract that is legally valid).

 Parties may rescind their contract by mutual agreement and thereby discharge themselves from their respective duties. *Texas Gas Utilities Co. v. Barrett,* 460 S.W.2d 409, 414 (Tex.1970). It is a well established rule that the repudiation of a contract by one party rescinds the contract when such repudiation is accepted by the other party. *Gage v. Wimberley,*

476 S.W.2d 724, 731 (Tex.Civ.App.-Tyler 1972, writ ref'd n.r.e.). If the repudiation is not accepted by the other party, the contract is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party, remains subject to all obligations under the contract. *See Griffith v. Porter,* 817 S.W.2d 131, 135 (Tex.App.-Tyler 1991, no writ). We must therefore examine the evidence in the record before us to determine if there was conclusive evidence that Lambeth, on behalf of Star Canyon, repudiated the one percent override provision of the April 19 agreement.

 The evidence was undisputed that only Lambeth, Griffin, and Embras were present at the April 23 closing. Each testified at trial that Embras destroyed the unsigned copies of the April 19 agreement after he was instructed by Griffin to do so. Embras testified that he had to leave the room to take a phone call, but that Griffin and Lambeth remained in the conference room and that he could not hear what Griffin and Lambeth were saying.

Griffin testified that he told Lambeth that "we won't close this deal" if the one percent override is part of it. Lambeth, on the other hand, stated that Griffin told him that he (Lambeth) "deserved something" and that he (Griffin) "would have to think about it." Lambeth further testified that he had the signed facsimile copy of the April 19 agreement, but did not know whether a facsimile was valid in a court of law. He also testified that he knew the facsimile copy was better than nothing, but did not know how good it was. Lambeth further stated that he proceeded with closing believing that Griffin was prepared to further negotiate the one percent override issue with him.

We iterate that the trial court is the sole judge of the credibility of the witnesses

and the weight to be given their testimony. *Nordstrom*, 965 S.W.2d at 580. Thus, we disagree with Santa Fe's contention that the evidence is conclusive that Griffin, on behalf of Santa Fe, repudiated the one percent override provision in the April 19 agreement. The trial court as fact finder could have reasonably concluded based on the evidence before it that Lambeth surmised he still had a one percent overriding royalty interest as evidenced by the signed written agreement he possessed and, further, that Griffin was prepared to continue negotiations with him at a later date concerning the one percent overriding royalty interest. There was not conclusive evidence to demonstrate that Lambeth accepted Griffin's repudiation of the one percent override. Thus, we hold that the contract was not rescinded. Santa Fe's first issue is overruled.

### WAIVER

In its second issue, Santa Fe contends that the evidence shows that Star Canyon waived any rights it had to the one percent override under the April 19 letter agreement. Santa Fe argues that the evidence was undisputed that Griffin stated at the April 23 closing that he would not close if Star Canyon required the assignment of the one percent override. Moreover, Santa Fe states that when confronted with Griffin's refusal to close, Lambeth and Star Canyon had the option of either (1) insisting that they be given the one percent override at the risk of losing the sale or (2) proceeding with the closing and abandoning the one percent override. It is therefore apparent, Santa Fe contends, that Star Canyon chose the latter course of action.

■■■ Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111

S.W.3d 153, 156 (Tex.2003). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id.* Waiver is ordinarily a question of fact. *Id.* A party's continuing performance after another party's breach is not a waiver of the right to recover damages due to the breach. *Cal–Tex Lumber Co. v. Owens Handle Company*, 989 S.W.2d 802, 812 (Tex.App.-Tyler 1999, pet. denied). A party to a contract has no duty to acknowledge or disavow a repudiation of a contract. *See Barrett*, 460 S.W.2d at 415.

■■■ The evidence of record reflects that Lambeth did not believe he only had the two options in responding to Griffin's repudiation of the one percent override. Lambeth testified that Griffin said he was going to think about the one percent override and that Star Canyon deserved something. It follows that Lambeth proceeded with the closing believing that Griffin was going to try to further negotiate the one percent override with him. Therefore, we hold that the evidence of record supports the trial court's implied finding that there was no waiver on Star Canyon's part. Santa Fe's second issue is overruled.

### ESTOPPEL

In its third issue, Santa Fe contends that the evidence shows Star Canyon should be estopped from claiming the one percent override. In support of its argument, Santa Fe urges that Lambeth failed to insist that he receive the one percent override after Griffin instructed Embras to destroy the letter agreement and, further, that Lambeth did not seek to enforce the previously-executed copy of the letter agreement he possessed. Santa Fe thus contends that Lambeth's conduct induced Griffin to proceed with the closing.

■■■■ To establish an equitable estoppel, Santa Fe was required to prove that Lambeth made (1) a false representation or concealment of material facts, (2) with knowledge, actual or constructive, of such facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or the means of knowledge of those facts, (5) who detrimentally relied upon the misrepresentation. *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). The burden of proving an estoppel and the essential elements thereof rests on the party asserting it, and the failure to prove any one or more of the elements is fatal. *See Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex. 1968).

■■■■ There is no duty to acknowledge or disavow a repudiation of a contract. *See Barrett*, 460 S.W.2d at 415. There must be a clear acquiescence to accept the repudiation. *See id.*

■■■■ In the case at hand, Santa Fe failed to demonstrate estoppel. The evidence does not support that Griffin, as representative for Santa Fe, lacked knowledge or the means of knowledge that he had executed a letter agreement giving Star Canyon a one percent overriding royalty interest. Griffin's signature appeared on the facsimile copy of the letter agreement possessed by Lambeth. Lambeth had no duty to further negotiate with regard to the one percent override or urge the validity of the previously-executed letter agreement that set forth Star Canyon's entitlement thereto before closing. We hold that the evidence does not conclusively demonstrate that Star Canyon should be estopped from receiving the one percent override. Santa Fe's third issue is overruled.

### AMBIGUITY

In its fourth issue, Santa Fe argues that the April 19 letter agreement was too ambiguous to be enforced because it did not specify which party was required to give Star Canyon the assignment of the one percent overriding royalty interest. Santa Fe further contends that the contract for the conveyance of an overriding interest in an oil or gas property must be in writing to satisfy the statute of frauds.

■■■■ The question of whether a contract is ambiguous is one of law for the court. *Heritage Resources Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *R. Conrad Moore & Associates, Inc. v. Lerma*, 946 S.W.2d 90, 94 (Tex.App.-El Paso 1997, pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows the parties used them in a technical or different sense. *Heritage Resources Inc.*, 939 S.W.2d at 121. We will enforce an unambiguous document as it is written. *Id.*

■■■■ Here, the April 19 agreement specifically states that it is between Star Canyon and Santa Fe.[1] The agreement describes the properties that are the subject of the March, April, and October 1999 closings conducted by these two parties. The agreement demonstrates that these properties were to be transferred to Santa Fe and its affiliates. The agreement specifically states that Star Canyon "shall be

---

1. As is discussed previously, TexTron Southwest, L.L.C. by name was also a party to this agreement.

given an assignment of one percent (1%) ORRI on any of the above acreage...." Thus, it was reasonable for the trial court to conclude that Santa Fe, as the only other party to the agreement, would be making the assignment of the one percent override interest to Star Canyon.

We do not consider Santa Fe's contention that the agreement violated the statute of frauds inasmuch as this affirmative defense was not pleaded. A party waives his right to assert the statute of frauds as a defense if he does not plead it. See TEX.R. CIV. P. 94; *First Nat'l Bank in Dallas v. Zimmerman*, 442 S.W.2d 674, 677 (Tex.1969). Therefore, Santa Fe has waived its reliance on such a defense. Santa Fe's fourth issue is overruled.

## CAPACITY OF PARTIES

In its fifth issue, Santa Fe contends that the trial court erred by entering judgment against TexTron Southwest, L.L.C. and Southwest Land and Pipeline Company, L.L.C. In its brief, Star Canyon replies that Santa Fe waived such a defense by failing to file a verified plea that there was a defect of parties. We agree. Where a defendant does not file a sworn pleading complaining of a defect of parties before the case is called to trial, such defect is waived. *Sunbelt Constr. Corp. v. S & D Mech.*, 668 S.W.2d 415, 418 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.); see TEX.R. CIV. P. 93(2), (4), (7).

Further, even if Santa Fe had not waived the issue, the outcome would not differ. The April 19 letter agreement specifically stated that TexTron was a party to the agreement along with Santa Fe. Documents involving the mineral interests in all three closings showed TexTron and Southwest as owning interests therein and are part of the record before us. The record further reflects that these three

companies are affiliated and intertwined. Santa Fe's fifth issue is overruled.

## ATTORNEY'S FEES

In its sixth issue, Santa Fe argues that, assuming the trial court erred in finding the letter agreement to be binding and enforceable, it also erred in awarding $12,000.00 in attorney's fees to Star Canyon. Since we have held that the trial court did not err as Santa Fe presupposes in this issue, it follows that the trial court did not err in awarding attorney's fees.

Whether to award attorney's fees in an action seeking a declaratory judgment is a matter within the trial court's sound discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). In reviewing a challenge to a trial court's award of attorney's fees under the Declaratory Judgments Act, the court of appeals will determine that the trial court abused its discretion when there is insufficient evidence that the fees were reasonable and necessary or when the award was inequitable or unjust as a matter of law. *Id.* at 21.

In the instant case, Star Canyon filed suit seeking a declaratory judgment and asking the trial court to award it reasonable and necessary attorney's fees as allowed by statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). There is evidence to support that the attorney's fees awarded to Star Canyon complied with Section 37.009. Nothing in our review of the record causes us to conclude that the award was either inequitable or unjust. Thomas R. McLeroy, Jr., Star Canyon's attorney, testified to his qualifications and experience as an attorney licensed to practice in and by the State of Texas. McLeroy further testified that he was familiar with the fees normally charged by attorneys in the area for matters of the nature and complexity of the instant case. McLeroy stated that he had

expended eighty hours in the prosecution of this suit and that his hourly rate was $150.00 an hour, bringing the total fee to approximately $12,000.00. We hold that the trial court did not abuse its discretion in awarding $12,000.00 in attorney's fees to Star Canyon. Santa Fe's sixth issue is overruled.

### DISPOSITION

Having overruled Santa Fe's issues one, two, three, four, five, and six, we **affirm** the trial court's judgment.