# NO. 12-10-00167-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| JOSEPH P. PRITCHETT, APPELLANT | § | APPEAL FROM THE 87TH |
| V. | § | JUDICIAL DISTRICT COURT |
| MIKE GAINES AND JANET GAINES, AS NEXT FRIENDS FOR MARTHA MICHELLE GAINES, NON COMPOS MENTIS, APPELLEES | § | ANDERSON COUNTY, TEXAS |

## *MEMORANDUM OPINION*

Joseph P. Pritchett appeals the trial court's judgment in favor of Martha Michelle Gaines, *non compos mentis*. In two issues, Pritchett challenges the legal and factual sufficiency of the evidence and the trial court's charge. Gaines raises one cross-issue related to the trial court's charge. We reverse and render.

## BACKGROUND

Michelle Gaines was stopped at an intersection in Palestine, Texas. When her light turned green, she entered the intersection. Unfortunately, Kenneth Woodworth ran through a red light into the same intersection and plowed into Gaines's vehicle. Gaines was driving a car, and Woodworth was driving a tractor-trailer. The trailer portion was an old oil rig. Gaines suffered serious injuries.

Benny Joe Adkinson, Woodworth's employer, owned the tractor-trailer that Woodworth was driving. The trailer should not have been on the road because it had no brakes, and Woodworth should not have been driving the tractor-trailer because he had no commercial driver's license. Nevertheless, Adkinson told Woodworth to drive the tractor-trailer from White Oak, Texas, to Corpus Christi, Texas.

Gaines's parents, Mike and Janet, individually and as next friends of Gaines, sued Woodworth, Adkinson, and Joseph Pritchett, claiming that all were liable: Woodworth because he was negligent in driving the vehicle, Adkinson because he was negligent in allowing

Woodworth to drive the vehicle, and Pritchett because he had entered into a joint enterprise with Adkinson related to the oil rig.[1]

According to Adkinson and Pritchett, Pritchett had no connection to the oil rig. But the Gaineses did not believe them. The Gaineses discovered that Adkinson was taking the oil rig to Pritchett's yard, and believed the two had agreed to work together to either blueprint or sell the rig.[2] The oil rig eventually made its way to Pritchett's yard, and many months after the accident, it was destroyed.

The case proceeded to trial. After the conclusion of the evidence, the trial court found that Gaines had proved her case against Woodworth and Adkinson as a matter of law. The trial court asked the jury to determine the damages sustained by Gaines and whether Pritchett should be held liable for those damages based on a joint enterprise with Adkinson. The jury awarded damages to Gaines and found that a joint enterprise did exist between Adkinson and Pritchett. The trial court rendered judgment in accordance with the jury's verdict. Pritchett appealed.[3]

## JOINT ENTERPRISE

In his first issue, Pritchett argues that there is no evidence to support the jury's finding of a joint enterprise between him and Adkinson related to the oil rig.

### Standard of Review

When reviewing a jury's verdict for legal sufficiency, we may set aside the verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. They may choose to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Most credibility questions are implicit rather than explicit in a jury's verdict. *Id.* Accordingly, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. *Id.*

---

[1] Shortly before the trial began, Mike and Janet Gaines nonsuited their individual claims, leaving only Martha Michelle Gaines's claim brought through her parents as next friends against the defendants. *See* TEX. R. CIV. P. 44; *see also* **Gracia v. RC Cola-7-Up Bottling Co.**, 667 S.W.2d 517, 519 (Tex. 1984) ("In a suit by a 'next friend,' the real party plaintiff is the child and not the next friend.").

[2] "Blueprinting" is a process used to copy the mechanical assemblies of the oil rig so that the same designs can be repeated on other rigs.

[3] Woodworth and Adkinson did not appeal the trial court's judgment against them; therefore, neither is a party to this appeal.

It is not necessary to have testimony from both parties before jurors may disbelieve either. *Id*. at 819-20. Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses. *Id*. at 820. Jurors are not free to believe testimony that is conclusively negated by undisputed facts. *Id*. But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review. *Id*.

In addition, it is the province of the jury to resolve conflicts in the evidence. *Id*. Consequently, we must assume that, where reasonable, the jury resolved all conflicts in the evidence in a manner consistent with its verdict. *Id*. If reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review. *Id*. at 821.

However, evidence cannot be taken out of context so that it seems to support a finding when it actually does not. *See id*. at 812. For instance, if a witness testifies, "I did not do that," a jury can disregard the whole statement but cannot disregard the middle word alone. *See id*. Findings must be based on more than speculation to be legally sufficient. *See id*. at 827. Finally, under the equal inference rule, evidence of circumstances equally consistent with two facts is legally insufficient of either. *See id*. at 813.

Regarding factual sufficiency challenges, where a party who did not have the burden of proof on an issue asserts that a jury's verdict is contrary to the evidence, we must overrule the complaint unless the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our review, we must consider all of the evidence that supports and that which is contrary to the verdict. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989). We must remember that the jury is the sole judge of the credibility of the witnesses. *See Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 638 (Tex. App.–Tyler 2004, no pet.) The jury may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *See id.* Where enough evidence is before the jury so that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the jury. *See id.*

## Applicable Law

Parties to a joint enterprise are agents of each other, and thus, liable for the negligent acts of each other. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). Parties form a joint enterprise when they (1) enter into an express or implied agreement, (2) with a common

purpose, (3) a community of pecuniary interest in that purpose, and (4) an equal right to a voice in the direction of the enterprise giving each an equal right of control. *Id*.

The elements necessary to form a binding contract are (1) an offer, (2) acceptance of the offer, (3) a meeting of the minds, (4) the parties' consent to the terms, (5) execution and delivery with the intent that it be mutual and binding, and (6) consideration. ***Advantage Physical Therapy, Inc. v. Cruse***, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.). Whether an agreement was reached is a question of fact. *Id*. A common pecuniary interest is a monetary interest shared without special or distinguishing characteristics among the members of the group. *See* ***St. Joseph Hosp. v. Wolff***, 94 S.W.3d 513, 531 (Tex. 2002). An equal right to a voice in the direction of the enterprise giving each an equal right of control means an authoritative voice, some right to do more than make suggestions that could be adopted or rejected. ***Triplex Commc'ns, Inc. v. Riley***, 900 S.W.2d 716, 719 (Tex. 1995).

The loss or destruction of evidence may seriously impair a party's ability to present its case. ***Tex. Elec. Coop. v. Dillard***, 171 S.W.3d 201, 208 (Tex. App.–Tyler 2005, no pet.) (citing ***Wal-Mart Stores, Inc. v. Johnson***, 106 S.W.3d 718, 721 (Tex. 2003)).

> Evidence spoliation is not a new concept. For years courts have struggled with the problem and devised possible solutions. Probably the earliest and most enduring solution was the spoliation inference or *omnia praesumuntur contra spoliatorem*: all things are presumed against a wrongdoer. In other words, within the context of the original lawsuit, the factfinder deduces guilt from the destruction of presumably incriminating evidence.

***Trevino v. Ortega***, 969 S.W.2d 950, 952 (Tex. 1998) (internal citations omitted).

"[W]hen spoliation occurs, there must be adequate measures to ensure that it does not improperly impair a litigant's rights . . . ." *Id*. at 953. It is simple, practical, and logical to rectify any improper conduct within the context of the lawsuit in which it is relevant. *Id*. "As with any discovery abuse or evidentiary issue, there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case."[4] *Id*.

**Discussion**

---

[4] The supreme court has explained that

> [e]vidence may be unavailable for discovery and trial for a variety of reasons. Evidence may be lost, altered or destroyed willfully and in bad faith or it may be lost for reasons completely innocent. Sometimes, lost evidence may be easily replicated, or it may be so marginal that it has little or no effect on the outcome of the case. On other occasions, the loss or destruction of evidence may seriously impair a party's ability to present its case. A trial judge should have discretion to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available. These remedies must generally be fashioned on a case-by-case basis.

***Wal-Mart Stores, Inc. v. Johnson***, 106 S.W.3d 718, 721 (Tex. 2003) (internal citations omitted).

Pritchett argues that the evidence is legally and factually insufficient as to every element of joint enterprise. Because our determination of the fourth element (i.e., the equal right to control the joint enterprise) is dispositive of the appeal, we focus our analysis there.

Adkinson purchased the oil rig from B.I. Owens. According to the sales receipt, Adkinson was the sole owner, and Pritchett owned no part of the rig. But Adkinson told Owens that he was buying the rig to blueprint it. Adkinson also spoke to Pritchett about blueprinting the oil rig. However, Adkinson denied that he and Pritchett ever agreed to blueprint the rig. And Pritchett likewise denied any plan with Adkinson to blueprint the rig. Pritchett testified that he could not decide whether he wanted an interest in the rig until after he had the opportunity to inspect the rig.

Pritchett saw a photograph of the rig before the accident. He also was on Adkinson's property just four days before the accident, but he claimed that he did not see the rig then. Also, Pritchett knew that Adkinson was taking the rig to Pritchett's yard near Corpus Christi. After the accident, Adkinson called Pritchett to tell him about the accident.

Gaines argues that other events after the accident evidence the joint enterprise between Adkinson and Pritchett. Pritchett lent Adkinson a substantial amount of money, and there was significant evidence that Adkinson was not creditworthy. Gaines believes this money led Adkinson to lie for Pritchett. She also argues that it shows a willingness on the part of Pritchett to be dishonest. And Gaines presented evidence that Pritchett and Adkinson were not honest to the jury.

Finally, Gaines argues that Pritchett was guilty of spoliation of evidence and that the relevant inferences from this conduct support the finding of joint enterprise. Months after the accident, the oil rig was delivered to Pritchett's yard. Many months later, and after an initial inspection by the Gaineses' attorney, Adkinson told Pritchett that he was taking the oil rig from Pritchett's yard to cut it up into scrap. Pritchett knew that the oil rig was evidence, and so he told his attorney about Adkinson's intentions to take the rig, but he did not tell him that Adkinson planned to destroy the rig. Pritchett's attorney told the Gaineses' attorney what he knew, but he did not convey that Adkinson planned to destroy the rig because Pritchett had not told him. Of course, Pritchett points out that Adkinson owned the rig, and thus he could not keep Adkinson from taking it.

Gaines argues that this evidence is similar to the evidence in *Able*. *See generally* **Tex. Dep't of Transp. v. Able**, 35 S.W.3d 608 (Tex. 2000). We disagree. In that case, the Ables collided with another vehicle traveling the wrong way in an HOV lane. *Id*. at 610. The Ables sued several entities, including the Texas Department of Transportation (TxDOT) and the Houston Metropolitan Transit Authority (Metro). *Id*. One of the Ables' theories for liability on the part of TxDOT was that Metro was negligent in its operation and maintenance of the HOV

lane and TxDOT was in a joint enterprise with Metro. *Id*. The jury agreed with this theory, and TxDOT appealed. *Id*.

The Texas Supreme Court found legally sufficient evidence of a joint enterprise. *Id*. at 616. However, TxDOT had a contractual right under its Master Agreement with Metro to participate in the operation and maintenance of the HOV lane. *Id*. at 615. TxDOT and Metro had agreed to work together to promulgate an "Operations Plan" for the roadways subject to the agreement. *Id*. at 616. And amendments to the Operations Plan could only be made with the consent of both TxDOT and Metro. *Id*. These contractual rights gave TxDOT "a voice and right to be heard regarding matters affecting the day-to-day operations of the [HOV lane]." *Id*. Here, however, there is no evidence describing any particular provisions of the agreement, or setting out any responsibilities under the agreement between Pritchett and Adkinson. In fact, there is scant evidence of any agreement at all.

Instead, we believe the facts of this case are more closely aligned with those in *Triplex*. *See generally* ***Triplex Commc'ns, Inc. v. Riley***, 900 S.W.2d 716 (Tex. 1995). There, as part of a nightclub's "ladies' night" promotion, a radio station conducted a broadcast from a nightclub. *Id*. at 717. During one such ladies' night, Joseph Wayne Stephens was served a clearly excessive amount of alcohol. *Id.* at 718. As he tried to drive home, he hit another car, and ricocheted into Beaumont police officers James Riley and Mary Gray as they were working another accident. *Id*. Riley and Gray were injured, and they sued the nightclub, the bartender who served Stephens, and the radio station. *Id*. The trial court refused to allow Riley and Gray to proceed on a theory of joint enterprise between the radio station and the nightclub. *Id*. After the intermediate appellate court reversed the trial court, the radio station appealed to the Texas Supreme Court. *Id*.

The Texas Supreme Court found the evidence legally insufficient. *Id*. at 719. Riley and Gray placed great emphasis on the fact that the drink prices for ladies' night corresponded to the radio frequency of the radio station. *Id*. However, the nightclub set the drink prices, was licensed to sell alcohol, and maintained absolute control over the serving of all alcohol. *Id*. The nightclub decided who could stay and who could be served. *Id*. No evidence was presented that the radio station had a contractual right of control or exercised any right of control over who was served or rejected. *Id*. Finally, the radio station's general participation in the event was deemed legally insufficient evidence of a right of control. *Id*.

Similarly, in this case, none of the evidence shows that Pritchett had an equal right to control the alleged enterprise. In fact, there is less evidence here than in *Triplex*, because the evidence here does not indicate that Pritchett could make suggestions that Adkinson could adopt or reject. The evidence shows only a conversation about potential blueprinting of the rig and that

the rig was being taken to Pritchett's yard. Quite simply, that is legally insufficient evidence of a joint enterprise.

Gaines's attempts to bolster the evidence with inferences—specifically evidence of the lack of honesty exhibited by Pritchett and Adkinson in their testimony, and Pritchett's assistance in the spoliation of evidence—fail to satisfy the legally sufficient evidence threshold. First, the testimony and evidence do nothing more than "give rise to any number of inferences, none more probable than another." *See Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995) (holding no evidence of community of pecuniary interest element of joint enterprise theory in car wreck when only evidence led to equally plausible inferences). Second, even assuming Pritchett is partially responsible for Adkinson's destruction of the rig, nothing on the rig could show whether Pritchett and Adkinson had an equal right to control the enterprise months earlier. And third, while the jury certainly could disregard the testimony of Pritchett and Adkinson, their testimony is not evidence of the opposite position. *City of Keller*, 168 S.W.3d at 812 (If a witness testifies, "I did not do that," a jury can disregard the whole statement but cannot disregard the middle word alone.).

In light of the record before us, we conclude that Gaines presented no evidence that Pritchett and Adkinson had an equal right to a voice in the direction of an enterprise relating to the oil rig giving each an equal right of control. Therefore, we hold that the evidence is not legally sufficient to support the jury's verdict that Pritchett and Adkinson had engaged in a joint enterprise with respect to the oil rig.

We sustain that portion of Pritchett's first issue related to the legal sufficiency of the evidence.

## REMAINING ISSUES

Because we have sustained Pritchett's first issue related to legal sufficiency, we do not address Pritchett's second issue. *See* TEX. R. APP. P. 47.1. Further, Gaines, in a cross-issue, argues that we should remand the case so that the trial court can instruct the jury as to spoliation. However, we have considered the evidence of spoliation and determined that it constituted no evidence that Pritchett had an equal right to a voice in the direction of the enterprise giving him an equal right of control. Because there is no evidence of an essential element of Gaines's claim of joint enterprise, the trial court should not have submitted the case to the jury. *See Triplex*, 900 S.W.2d at 719. Thus, we need not address Gaines's argument regarding charge error in failing to submit her requested spoliation instruction to the jury. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having sustained Pritchett's first issue, we *reverse* the trial court's judgment and *render* judgment in favor of Pritchett and against Gaines such that Gaines takes nothing from Pritchett as a result of this suit.

**B**RIAN **H**OYLE
Justice

Opinion delivered July 13, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)