NO. 12-10-00167-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JOSEPH P. PRITCHETT,                            
§                    APPEAL FROM THE 87TH

APPELLANT

 

                                                

V.                                                                    

                                                                         §                     JUDICIAL
DISTRICT COURT 

MIKE GAINES AND JANET
GAINES, 

AS NEXT FRIENDS FOR MARTHA 

MICHELLE GAINES, NON COMPOS


MENTIS, APPELLEES                               
§                     ANDERSON COUNTY, TEXAS







MEMORANDUM
OPINION

            Joseph
P. Pritchett appeals the trial court’s judgment in favor of Martha Michelle
Gaines, non compos mentis.  In two issues, Pritchett challenges the
legal and factual sufficiency of the evidence and the trial court’s charge.  Gaines
raises one cross-issue related to the trial court’s charge.  We reverse and
render. 

 

Background

            Michelle
Gaines was stopped at an intersection in Palestine, Texas.  When her light
turned green, she entered the intersection.  Unfortunately, Kenneth Woodworth
ran through a red light into the same intersection and plowed into Gaines’s
vehicle.  Gaines was driving a car, and Woodworth was driving a tractor-trailer. 
The trailer portion was an old oil rig.  Gaines suffered serious injuries.

            Benny
Joe Adkinson, Woodworth’s employer, owned the tractor-trailer that Woodworth
was driving.  The trailer should not have been on the road because it had no
brakes, and Woodworth should not have been driving the tractor-trailer because
he had no commercial driver’s license.  Nevertheless, Adkinson told Woodworth
to drive the tractor-trailer from White Oak, Texas, to Corpus Christi, Texas.       

Gaines’s parents, Mike and Janet, individually and as next
friends of Gaines, sued Woodworth, Adkinson, and Joseph Pritchett, claiming
that all were liable:  Woodworth because he was negligent in driving the
vehicle, Adkinson because he was negligent in allowing Woodworth to drive the
vehicle, and Pritchett because he had entered into a joint enterprise with
Adkinson related to the oil rig.[1]

According to Adkinson and Pritchett, Pritchett had no
connection to the oil rig.  But the Gaineses did not believe them.  The Gaineses
discovered that Adkinson was taking the oil rig to Pritchett’s yard, and
believed the two had agreed to work together to either blueprint or sell the
rig.[2]   The oil rig eventually made
its way to Pritchett’s yard, and many months after the accident, it was
destroyed. 

The case proceeded to trial.  After the conclusion of the
evidence, the trial court found that Gaines had proved her case against
Woodworth and Adkinson as a matter of law.  The trial court asked the jury to
determine the damages sustained by Gaines and whether Pritchett should be held
liable for those damages based on a joint enterprise with Adkinson.  The jury
awarded damages to Gaines and found that a joint enterprise did exist between
Adkinson and Pritchett.  The trial court rendered judgment in accordance with
the jury’s verdict.  Pritchett appealed.[3]

 

Joint Enterprise

            In
his first issue, Pritchett argues that there is no evidence to support the
jury’s finding of a joint enterprise between him and Adkinson related to the
oil rig.

 Standard
of Review

            When
reviewing a jury’s verdict for legal sufficiency, we may set aside the verdict
only if the evidence at trial would not enable reasonable and fair-minded
people to reach the verdict under review.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  In making this determination, we must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.  Id.  Jurors are the
sole judges of the credibility of the witnesses and the weight to give their
testimony.  Id. at 819.  They may choose to believe
one witness and disbelieve another, and reviewing courts may not impose their
own opinions to the contrary.  Id.  Most credibility
questions are implicit rather than explicit in a jury’s verdict.  Id. 
Accordingly, reviewing courts must assume jurors decided all of them in favor
of the verdict if reasonable human beings could do so.  Id.
 

            It
is not necessary to have testimony from both parties before jurors may
disbelieve either.  Id. at 819-20.  Jurors may
disregard even uncontradicted and unimpeached testimony from disinterested
witnesses.  Id. at 820.  Jurors are not free to
believe testimony that is conclusively negated by undisputed facts.  Id. 
But whenever reasonable jurors could decide what testimony to discard, a
reviewing court must assume they did so in favor of their verdict, and
disregard it in the course of legal sufficiency review.  Id.

            In
addition, it is the province of the jury to resolve conflicts in the evidence.  Id.
 Consequently, we must assume that, where reasonable, the jury resolved
all conflicts in the evidence in a manner consistent with its verdict.  Id.
 If reasonable jurors could resolve conflicting evidence either way, reviewing
courts must presume they did so in favor of the prevailing party, and disregard
the conflicting evidence in their legal sufficiency review.  Id.
at 821.

            However,
evidence cannot be taken out of context so that it seems to support a finding
when it actually does not.  See id. at 812.  For instance,
if a witness testifies, “I did not do that,” a jury can disregard the whole
statement but cannot disregard the middle word alone.  See id.  
Findings must be based on more than speculation to be legally sufficient.  See
id. at 827.  Finally, under the equal inference rule,
evidence of circumstances equally consistent with two facts is legally
insufficient of either.  See id. at 813.

            Regarding
factual sufficiency challenges, where a party who did not have the burden of
proof on an issue asserts that a jury’s verdict is contrary to the evidence, we
must overrule the complaint unless the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  In conducting
our review, we must consider all of the evidence that supports and that which
is contrary to the verdict.  Sosa v. City of Balch Springs, 772
S.W.2d 71, 72 (Tex. 1989).  We must remember that the jury is the sole judge of
the credibility of the witnesses.  See Santa Fe Petroleum, L.L.C. v. Star
Canyon Corp., 156 S.W.3d 630, 638 (Tex. App.–Tyler 2004, no pet.)  The
jury may take into consideration all of the facts and surrounding circumstances
in connection with the testimony of each witness and accept or reject all or
any part of that testimony.  See id.  Where enough evidence is
before the jury so that reasonable minds could differ on the meaning of the
evidence, or the inferences and conclusions to be drawn from the evidence, we
may not substitute our judgment for that of the jury.  See id.

Applicable
Law         

            Parties
to a joint enterprise are agents of each other, and thus, liable for the
negligent acts of each other.  Tex. Dep’t of Transp. v. Able, 35
S.W.3d 608, 613 (Tex. 2000).  Parties form a joint enterprise when they (1)
enter into an express or implied agreement, (2) with a common purpose, (3) a
community of pecuniary interest in that purpose, and (4) an equal right to a
voice in the direction of the enterprise giving each an equal right of control. 
Id.

The elements necessary to form a binding contract are (1) an
offer, (2) acceptance of the offer, (3) a meeting of the minds, (4) the
parties’ consent to the terms, (5) execution and delivery with the intent that
it be mutual and binding, and (6) consideration.  Advantage Physical
Therapy, Inc. v. Cruse, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th
Dist.] 2005, no pet.).  Whether an agreement was reached is a question of
fact.  Id.  A common pecuniary interest is a monetary interest shared
without special or distinguishing characteristics among the members of the
group.  See St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 531
(Tex. 2002).  An equal right to a voice in the direction of the enterprise
giving each an equal right of control means an authoritative voice, some right
to do more than make suggestions that could be adopted or rejected.  Triplex
Commc’ns, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995).

The loss or destruction of evidence may seriously impair a
party’s ability to present its case.  Tex. Elec. Coop. v. Dillard,
171 S.W.3d 201, 208 (Tex. App.–Tyler 2005, no pet.) (citing Wal-Mart
Stores, Inc. v. Johnson, 106 S.W.3d 718, 721 (Tex. 2003)).  

 

Evidence spoliation is not a new concept.  For years
courts have struggled with the problem and devised possible solutions. 
Probably the earliest and most enduring solution was the spoliation inference
or omnia praesumuntur contra spoliatorem: all things are presumed
against a wrongdoer.  In other words, within the context of the original
lawsuit, the factfinder deduces guilt from the destruction of presumably
incriminating evidence.

 

Trevino
v. Ortega, 969 S.W.2d 950, 952 (Tex. 1998) (internal citations
omitted).  

            “[W]hen
spoliation occurs, there must be adequate measures to ensure that it does not
improperly impair a litigant’s rights . . . .”  Id. at
953.  It is simple, practical, and logical to rectify any improper conduct
within the context of the lawsuit in which it is relevant.  Id. 
“As with any discovery abuse or evidentiary issue, there is no one remedy that
is appropriate for every incidence of spoliation; the trial court must respond
appropriately based upon the particular facts of each individual case.”[4]  Id.

Discussion

Pritchett argues that the evidence is legally and factually
insufficient as to every element of joint enterprise.  Because our
determination of the fourth element (i.e., the equal right to control the joint
enterprise) is dispositive of the appeal, we focus our analysis there.

Adkinson purchased the oil rig from B.I. Owens.  According to
the sales receipt, Adkinson was the sole owner, and Pritchett owned no part of
the rig.  But Adkinson told Owens that he was buying the rig to blueprint it.  Adkinson
also spoke to Pritchett about blueprinting the oil rig.  However, Adkinson denied
that he and Pritchett ever agreed to blueprint the rig.  And Pritchett likewise
denied any plan with Adkinson to blueprint the rig.  Pritchett testified that
he could not decide whether he wanted an interest in the rig until after he had
the opportunity to inspect the rig.

Pritchett saw a photograph of the rig before the accident. 
He also was on Adkinson’s property just four days before the accident, but he
claimed that he did not see the rig then.  Also, Pritchett knew that Adkinson
was taking the rig to Pritchett’s yard near Corpus Christi.  After the
accident, Adkinson called Pritchett to tell him about the accident.

Gaines argues that other events after the accident evidence
the joint enterprise between Adkinson and Pritchett.  Pritchett lent Adkinson a
substantial amount of money, and there was significant evidence that Adkinson
was not creditworthy.  Gaines believes this money led Adkinson to lie for
Pritchett.  She also argues that it shows a willingness on the part of
Pritchett to be dishonest.  And Gaines presented evidence that Pritchett and
Adkinson were not honest to the jury.

Finally, Gaines argues that Pritchett was guilty of
spoliation of evidence and that the relevant inferences from this conduct
support the finding of joint enterprise.  Months after the accident, the oil
rig was delivered to Pritchett’s yard.  Many months later, and after an initial
inspection by the Gaineses’ attorney, Adkinson told Pritchett that he was
taking the oil rig from Pritchett’s yard to cut it up into scrap.  Pritchett
knew that the oil rig was evidence, and so he told his attorney about
Adkinson’s intentions to take the rig, but he did not tell him that Adkinson
planned to destroy the rig.  Pritchett’s attorney told the Gaineses’ attorney
what he knew, but he did not convey that Adkinson planned to destroy the rig
because Pritchett had not told him.  Of course, Pritchett points out that Adkinson
owned the rig, and thus he could not keep Adkinson from taking it.

            Gaines
argues that this evidence is similar to the evidence in Able.  See
generally Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608
(Tex. 2000).  We disagree.  In that case, the Ables collided with another
vehicle traveling the wrong way in an HOV lane.  Id. at
610.  The Ables sued several entities, including the Texas Department of
Transportation (TxDOT) and the Houston Metropolitan Transit Authority (Metro). 
Id.  One of the Ables’ theories for liability on the part of
TxDOT was that Metro was negligent in its operation and maintenance of the HOV
lane and TxDOT was in a joint enterprise with Metro.  Id.  The
jury agreed with this theory, and TxDOT appealed.  Id.

The Texas Supreme Court found legally sufficient evidence of
a joint enterprise.  Id. at 616.  However, TxDOT had a
contractual right under its Master Agreement with Metro to participate in the
operation and maintenance of the HOV lane.  Id. at
615.   TxDOT and Metro had agreed to work together to promulgate an “Operations
Plan” for the roadways subject to the agreement.  Id. at
616.  And amendments to the Operations Plan could only be made with the consent
of both TxDOT and Metro.  Id.  These contractual rights gave
TxDOT “a voice and right to be heard regarding matters affecting the day-to-day
operations of the [HOV lane].”  Id.  Here, however, there is no
evidence describing any particular provisions of the agreement, or setting out
any responsibilities under the agreement between Pritchett and Adkinson.  In
fact, there is scant evidence of any agreement at all.

Instead, we believe the facts of this case are more closely
aligned with those in Triplex.  See generally Triplex
Commc’ns, Inc. v. Riley, 900 S.W.2d 716 (Tex. 1995).  There, as part of
a nightclub’s “ladies’ night” promotion, a radio station conducted a broadcast
from a nightclub.  Id. at 717.  During one such ladies’
night, Joseph Wayne Stephens was served a clearly excessive amount of alcohol. 
Id. at 718.  As he tried to drive home, he hit another car, and
ricocheted into Beaumont police officers James Riley and Mary Gray as they were
working another accident.  Id.  Riley and Gray were injured, and
they sued the nightclub, the bartender who served Stephens, and the radio
station.  Id.  The trial court refused to allow Riley and Gray to
proceed on a theory of joint enterprise between the radio station and the
nightclub.  Id.  After the intermediate appellate court reversed
the trial court, the radio station appealed to the Texas Supreme Court.  Id.

The Texas Supreme Court found the evidence legally
insufficient.  Id. at 719.  Riley and Gray placed great
emphasis on the fact that the drink prices for ladies’ night corresponded to
the radio frequency of the radio station.  Id.  However, the
nightclub set the drink prices, was licensed to sell alcohol, and maintained
absolute control over the serving of all alcohol.  Id.  The
nightclub decided who could stay and who could be served.  Id. 
No evidence was presented that the radio station had a contractual right of
control or exercised any right of control over who was served or rejected.  Id. 
Finally, the radio station’s general participation in the event was deemed
legally insufficient evidence of a right of control.  Id.

            Similarly,
in this case, none of the evidence shows that Pritchett had an equal right to
control the alleged enterprise.  In fact, there is less evidence here than in Triplex,
because the evidence here does not indicate that Pritchett could make
suggestions that Adkinson could adopt or reject.  The evidence shows only a
conversation about potential blueprinting of the rig and that the rig was being
taken to Pritchett’s yard.  Quite simply, that is legally insufficient evidence
of a joint enterprise.

Gaines’s attempts to bolster the evidence with inferences—specifically
evidence of the lack of honesty exhibited by Pritchett and Adkinson in their
testimony, and Pritchett’s assistance in the spoliation of evidence—fail to
satisfy the legally sufficient evidence threshold.  First, the testimony and
evidence do nothing more than “give rise to any number of inferences, none more
probable than another.”  See Blount v. Bordens, Inc., 910 S.W.2d
931, 933 (Tex. 1995) (holding no evidence of community of pecuniary interest
element of joint enterprise theory in car wreck when only evidence led to
equally plausible inferences).  Second, even assuming Pritchett is partially
responsible for Adkinson’s destruction of the rig, nothing on the rig could
show whether Pritchett and Adkinson had an equal right to control the
enterprise months earlier.  And third, while the jury certainly could disregard
the testimony of Pritchett and Adkinson, their testimony is not evidence of the
opposite position.  City of Keller, 168 S.W.3d at 812 (If a
witness testifies, “I did not do that,” a jury can disregard the whole
statement but cannot disregard the middle word alone.).   

            In
light of the record before us, we conclude that Gaines presented no evidence
that Pritchett and Adkinson had an equal right to a voice in the direction of
an enterprise relating to the oil rig giving each an equal right of control.  Therefore,
we hold that the evidence is not legally sufficient to support the jury’s
verdict that Pritchett and Adkinson had engaged in a joint enterprise with
respect to the oil rig. 

We sustain that portion of Pritchett’s first issue related to
the legal sufficiency of the evidence.

 

Remaining Issues

Because we have sustained Pritchett’s first issue related to
legal sufficiency, we do not address Pritchett’s second issue.  See Tex. R. App. P. 47.1.  Further, Gaines,
in a cross-issue, argues that we should remand the case so that the trial court
can instruct the jury as to spoliation.  However, we have considered the
evidence of spoliation and determined that it constituted no evidence that
Pritchett had an equal right to a voice in the direction of the enterprise
giving him an equal right of control.  Because there is no evidence of an essential
element of Gaines’s claim of joint enterprise, the trial court should not have
submitted the case to the jury.  See Triplex, 900 S.W.2d at 719. 
Thus, we need not address Gaines’s argument regarding charge error in failing
to submit her requested spoliation instruction to the jury.  See Tex. R. App. P. 47.1. 

 

Disposition

            Having
sustained Pritchett’s first issue, we reverse the trial court’s
judgment and render judgment in favor of Pritchett and against
Gaines such that Gaines takes nothing from Pritchett as a result of this suit.

 

                                                                                                Brian Hoyle

                                                                                                        
Justice

 

Opinion delivered July 13, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

(PUBLISH)









[1] Shortly before the trial began,
Mike and Janet Gaines nonsuited their individual claims, leaving only Martha
Michelle Gaines’s claim brought through her parents as next friends against the
defendants.  See Tex. R. Civ. P. 44;
see also Gracia v. RC Cola-7-Up Bottling Co., 667 S.W.2d
517, 519 (Tex. 1984) (“In a suit by a ‘next friend,’ the real party plaintiff
is the child and not the next friend.”).

 





                [2]
“Blueprinting” is a process used to copy the mechanical assemblies of the oil
rig so that the same designs can be repeated on other rigs.

 





                [3]
Woodworth and Adkinson did not appeal the trial court’s judgment against them; therefore,
neither is a party to this appeal.

 





                [4]  The supreme court has explained
that

 

[e]vidence may be unavailable for
discovery and trial for a variety of reasons.  Evidence may be lost, altered or
destroyed willfully and in bad faith or it may be lost for reasons completely
innocent.  Sometimes, lost evidence may be easily replicated, or it may be so
marginal that it has little or no effect on the outcome of the case.  On other
occasions, the loss or destruction of evidence may seriously impair a party’s
ability to present its case.  A trial judge should have discretion to fashion
an appropriate remedy to restore the parties to a rough approximation of their
positions if all evidence were available.  These remedies must generally be
fashioned on a case-by-case basis. 

 

Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 721 (Tex. 2003)
(internal citations omitted).