# NO. 12-06-00295-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF B.G.,* | § | *APPEAL FROM THE 217TH* |
| *C.W., E.W., B.B.W. AND J.W.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

L.W. appeals the termination of his parental rights. In three issues, J.W. challenges the trial court's order of termination. We affirm.

## BACKGROUND

L.W. is the stepfather of B.G. and the father of C.W., E.W., B.B.W., and J.W.[1] B.G., who was fourteen years old at the time, told her teacher that L.W. was sexually abusing her. The Department of Family and Protective Services (the Department) investigated L.W.'s alleged inappropriate relationship with B.G., as well as the conditions of L.W.'s home and his parenting abilities. Shortly thereafter, the Department removed all of the children from L.W.'s home. Then, the Department filed a petition for protection of B.G., C.W., E.W., B.B.W., and J.W., for conservatorship, and for termination of L.W.'s parental rights.

During this same time period, L.W. was the subject of a criminal investigation. Before the termination suit went to trial, a jury convicted L.W. of one count of aggravated sexual assault, and one count of sexual assault. The jury assessed L.W.'s punishment at eighty years of imprisonment and a $10,000 fine for his aggravated sexual assault conviction, and twenty years of imprisonment and a $10,000 fine for his sexual assault conviction. L.W.'s criminal trial concluded only two weeks before the trial of this case.

A bench trial began on May 23, 2006. At that time, L.W. was represented by counsel. The case was recessed until July 13, 2006. Before the first witness finished testifying on July 13, L.W. terminated his counsel, and proceeded without counsel for the remainder of the trial. At trial, the Department confirmed that it did not seek to terminate L.W.'s parental rights based on

---

[1] L.W. is the biological father of one other child, D.W., who was not part of this termination suit.

his previous convictions. At the conclusion of the trial, the trial court found, by clear and convincing evidence, that (1) L.W. knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, (2) L.W. engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, and that (3) termination was in the children's best interest. Thus, the trial court terminated the parent-child relationship between L.W. and his children C.W., E.W., B.B.W., and J.W.

After appellate counsel was appointed, L.W. filed his statement of points for appeal. Believing L.W.'s statement of points was not timely filed and that there was no substantial question for appellate review, the trial court did not provide L.W. a free record for his appeal. L.W. appealed to this court, and we affirmed the judgment of the trial court. *See In re B.G.*, 317 S.W.3d 259, 261 (Tex. App.—Tyler 2007), *rev'd and remanded,* 317 S.W.3d 250 (Tex. 2010). After granting L.W.'s petition for review, the Texas Supreme Court determined that Section 263.405, as applied to L.W., deprived him of due process. *See In re B.G.*, 317 S.W.3d 250, 258 (Tex. 2010). Therefore, the supreme court reversed this court's judgment and remanded the case with instructions that we "should consider the issues raised in [L.W.'s] statement of points as if it had been timely filed." *Id*.

## STANDARD OF REVIEW FOR EVIDENTIARY RULINGS

We review a trial court's evidentiary rulings for abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its actions are arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

To obtain reversal of a judgment based on a trial court's error in admitting or excluding evidence, the complaining party must show that (1) the trial court committed an error, and (2) the error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *State v. Central Expressway Sign Assoc.*, 302 S.W.3d 866, 870 (Tex. 2009); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *see also* TEX. R. APP. P. 44.1(a)(1).

In reviewing a cause tried before the court, the appellate court generally assumes that the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). The admission of such evidence will generally not require reversal of the judgment when there is competent evidence to authorize its rendition. *Id*. Any error in excluding evidence is harmless if other admitted evidence reveals the same facts as that which was excluded. *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.]

2

1991, writ denied). And error in the improper admission of evidence is usually deemed harmless if the objecting party permits the same or similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984). Moreover, no reversible error exists if the evidence in question is cumulative or is not controlling on a material, dispositive issue. *Roberts v. Clark*, 188 S.W.3d 204, 208 (Tex. App.—Tyler 2002, pet denied); *see also Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("Clearly, erroneous admission is harmless if it is merely cumulative."). Thus, evidentiary rulings will not cause reversal unless an appellant demonstrates that the entire case turns on the evidence improperly admitted. *Roberts*, 188 S.W.3d at 208. We determine whether the case turns on the challenged evidence by reviewing the entire record. *Gillespie*, 644 S.W.2d at 450.

### ADMISSION OF EVIDENCE

In his second and third issues, L.W. contends that the trial court abused its discretion by admitting evidence of his criminal convictions for aggravated sexual assault and sexual assault, and by admitting his psychological evaluation.

### Applicable Law

When the supreme court expressly limits our review on remand, we are bound to follow that restriction. *See Haupt, Inc. v. Tarrant Cnty. Water Control & Improvement Dist. No. One*, 870 S.W.2d 350, 352 (Tex. App.—Waco 1994, no writ.). If we fail to do so, we abuse our discretion. *Lee v. Downey*, 842 S.W.2d 646, 648 (Tex. 1992).

Further, Section 263.405 of the Texas Family Code applies to appeals from final orders rendered in parental rights termination suits and dictates specific requirements for the process. *See* TEX. FAM. CODE ANN. § 263.405 (West 2008). A party intending to appeal a final order terminating parental rights must file with the trial court a statement of points on which the party intends to appeal. *Id*. § 263.405(b)(2). The statement may be filed separately or may be combined with a motion for new trial. *Id*. § 263.405(b-1). The statute provides that an "appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of points." *Id*. § 263.405(i); *In re B.G.*, 317 S.W.3d at 252. Exceptions to this rule have been made only for claims of ineffective assistance of counsel and certain constitutional complaints. *See In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009); *In re D.W.*, 249 S.W.3d 625, 632 (Tex. App.–Fort Worth 2008, pet. denied).

### Analysis

As previously mentioned, the supreme court remanded this case with specific instructions that we "should consider the issues raised in [L.W.'s] statement of points as if it had been timely filed." *See In re B.G.*, 317 S.W.3d at 258. However, in his statement of points, L.W. did not

complain about the admission of his criminal convictions for aggravated sexual assault and sexual assault, or the admission of his psychological evaluation. Because L.W. failed to raise these issues in his statement of points and because our remand was limited to issues raised in his statement of points, we may not address these issues. *See id.*; *see also* TEX. FAM. CODE ANN. § 263.405(i).

Even if we were to consider the merits of L.W.'s second and third issues, the outcome would not change. First, evidence of L.W.'s sexual assault of B.G. was presented without objection. But the record contains other evidence of the sexual assault. B.G.'s teacher, Nancy Bryant, testified that, in a conversation, B.G. made an outcry statement that L.W. sexually assaulted her. Ruth Roberts, a licensed professional counselor, testified that, during counseling, B.G. said L.W. sexually assaulted her. Norma Sanford, a registered nurse with Memorial Hospital, conducted a sexual assault nurse examination of B.G. and testified that B.G. told her that L.W. sexually assaulted her. Mayreen Dykes, a home health worker, provided services to L.W.'s brother as a certified nurse's aide. According to Dykes, L.W.'s brother lived with L.W. Dykes worked in the house for approximately two and one-half years and provided circumstantial evidence that L.W. sexually assaulted B.G. Dykes testified that if B.G. asked to go out with friends, L.W. would initially refuse. Then, L.W. and B.G. would go into the master bedroom, lock the door, and stay there approximately thirty-five to forty-five minutes. When they would come out, B.G. would be allowed to go out with her friends. C.W. also testified that L.W. would take B.G. into the master bedroom if she wanted to go out with friends. He stated that it happened "a lot."

Second, evidence of L.W.'s criminal convictions was presented without objection. But the record also contains other evidence of the convictions. Lindsay Tomes, a conservatorship worker with Child Protective Services, testified that L.W. was sentenced to eighty years in the penitentiary. Frankie Clark, Ph.D., a psychologist, testified that L.W. was going to prison for a long time and would probably never get out. John Martin, a CASA worker, testified that he was aware that L.W. had been convicted of sexual assault. Bobby Epperly, Jr., chief of police of the Zavalla Police Department, testified that he obtained warrants against L.W. for aggravated sexual assault of a child and sexual assault of a child.

Third, evidence of L.W.'s psychological evaluation was presented without objection. Clark testified that, if the evaluation stated that L.W. was schizoid, that would mean that he has an unusual thought process and may be hearing and seeing things that other people do not hear or see. If the evaluation stated that he was histrionic, that would mean that L.W. becomes hysterical, blows things up, and exaggerates. Further, Clark testified that if the evaluation stated that L.W. was masochistic, that would mean that L.W. is self-defeating.

4

Even without the admission of L.W.'s criminal convictions and psychological evaluation, strong evidence was presented, without objection, for termination of L.W.'s parental rights. Roberts testified that, during counseling, C.W. said that he observed L.W. smothering B.G. with a pillow and chasing B.W., his mother, with a knife. C.W. testified at trial that L.W. fought with B.W. and once took a knife into a room with B.W., locked the door, and threatened to kill her. C.W. stated that L.W. would sleep next to him naked. He further testified that he never wanted to see L.W. again.

Clark testified that, during counseling, B.W. reported that L.W. was extremely abusive toward her and the children, and said that he whipped all the children excessively, except for B.G. He agreed that family life with L.W. was violent and terrible. Lisa Soto, an investigation supervisor with Child Protective Services, testified that L.W.'s house was a safety hazard for the children because it was not clean. She stated that the house was cluttered and that medical equipment for B.B.W. was not sterilized or it was rusty. A.M.S., E.W.'s aunt, testified that E.W. told her L.W. would get into bed with him with no clothes on, and that L.W. put his fingers into E.W.'s "bottom."

Dykes testified that L.W. was loud and verbally abusive, "holler[ing]," screaming, and cursing at B.W. and the children. According to Dykes, B.W. and the children were scared of L.W. She also testified that the youngest child, J.W., spent most of the time in his car seat while L.W. watched television or slept. Dykes testified that the house was not liveable, stating that it was roach infested and "very nasty," with clothes piled up in the wash room and garbage scattered everywhere.

In summary, even if we were to address the merits of L.W.'s second and third issues, it is clear that the evidence of L.W.'s criminal convictions is merely cumulative of evidence properly received without objection. *See Richardson*, 677 S.W.2d at 501; *Roberts*, 188 S.W.3d at 208. Furthermore, his psychological examination was admitted without objection. Also, even if the challenged evidence had been excluded, other strong evidence supports the trial court's order. Consequently, we would be unable to conclude from the record that the entire case turned on L.W.'s convictions and his psychological evaluation. *See Roberts*, 188 S.W.3d at 208. And even if the trial court erroneously admitted the evidence, we could not conclude, based upon the record, that the error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *See Gee*, 765 S.W.2d at 396.

L.W.'s second and third issues are overruled.

**EXCLUSION OF EVIDENCE**

In his first issue, L.W. argues that the trial court abused its discretion by excluding the testimony of his sister, M.M., at trial.[2] The Department contends that M.M. was not present at the trial, and that L.W. never called her to testify.

## Trial Proceedings

On the first day of trial, May 23, 2006, L.W.'s counsel informed the trial court that L.W.'s mother and sister would testify, but that they were not present in court. Thus, L.W.'s counsel requested that, if these witnesses were not able to be at court that day, the trial be recessed "until such time as they can come and testify" on his behalf. At the end of the day, L.W.'s counsel advised the trial court that L.W. and one other witness would testify. The trial court then recessed the trial until July 13, 2006.

When the trial resumed, L.W.'s counsel told the trial court that L.W. and his sister, M.M., would testify. Shortly thereafter, L.W. asked to speak directly to the trial court. He complained that his witnesses were not present and blamed his counsel, stating that he had "no witnesses to testify on [his] behalf." Before the first witness finished testifying, L.W. terminated his counsel and proceeded without counsel for the remainder of the trial. During the trial, L.W. requested a continuance and a new trial because his witnesses were not present. The trial court overruled both requests. Later, the trial court allowed L.W. to call two witnesses out of order, Tammy Holder and Evelyn Standridge. Both Holder and Standridge testified that they knew M.M. from church and believed she could take care of C.W.

At one point, L.W. requested that the trial be stopped, stating that his counsel did not "bring [his] witnesses." However, the trial continued. When the Department rested, L.W. called Soto. After Soto testified, the trial court refused to allow L.W. to call anyone else as a witness. During his closing statement, L.W. again complained that his sister, M.M., and his mother had not had the opportunity to testify. Then, he again requested that his sister be allowed to testify. The trial court stated that L.W. could testify, but refused to allow him to call his sister to testify.

## Harm Analysis

Having read the entire record, we note that M.M. may not have been present and available to testify. Further, L.W. may have been reurging his request for a continuance or new trial when he asked that she be allowed to testify at the conclusion of the trial. Nevertheless, even if we assume that M.M. was available to testify and that the trial court abused its discretion

---

[2] In his brief on remand, L.W. complains that he was not allowed to present all of his witnesses at trial. However, M.M. was the only witness discussed in L.W.'s appellate brief. To the extent that L.W.'s first issue complains that the trial court excluded the testimony of other witnesses, L.W. has waived his complaint by failing to provide a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i).

by excluding her testimony, L.W. has failed to show harm. *See Central Expressway Sign Assoc.*, 302 S.W.3d at 870; *Gee*, 765 S.W.2d at 396.

At trial, L.W. told the trial court that he wanted M.M. to testify regarding the Department's investigation of her home. Vicky Winthrop, a kinship worker with the Department, stated that she conducted a home study on M.M.'s home.  Winthrop did not approve it as a potential home for the children because M.M. did not believe that L.W. sexually assaulted B.G., did not get along with B.W., and had negative comments about B.G.  Further, L.W. presented the testimony of two of M.M.'s friends from church who asserted that M.M. would be able to take care of C.W.  Thus, M.M.'s testimony regarding the home study would have been somewhat cumulative of previously admitted testimony. *See Gee*, 765 S.W.2d at 397; *Rampel*, 845 S.W.2d at 922. Moreover, whether M.M.'s home was a potential placement for the children is a tangential issue as to whether L.W.'s parental rights should be terminated.

Regarding the termination of L.W.'s parental rights, Dykes testified that M.M. visited L.W.'s home "every once in a while." Neither Dykes nor any other witness testified that M.M. lived in the home. Thus, M.M.'s knowledge of L.W.'s alleged sexual assault of B.G., and his abuse of B.W. and the children would have been severely limited. As previously noted, there was overwhelming evidence presented to show that L.W.'s parental rights should be terminated. Against that evidence, M.M.'s possible testimony, as an occasional visitor, would have been inconsequential.  Thus, even if the trial court erred in excluding M.M.'s testimony, L.W. failed to show that this error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment.  *See Central Expressway Sign Assoc.*, 302 S.W.3d at 870; *Gee*, 765 S.W.2d at 397. Accordingly, L.W.'s first issue is overruled.

### DISPOSITION

Having overruled L.W.'s first, second, and third issues, we *affirm* the trial court's order of termination.

**BRIAN HOYLE**
Justice

Opinion delivered August 17, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)